604 A.2d 502

**William E. DIXON**

v.

**KEENELAND ASSOCIATES, INC.**

**No. 1038, Sept. Term, 1991.**

Court of Special Appeals of Maryland.

April 10, 1992.

William E. Dixon, Annapolis, for appellant.

Paul Garvey Goetzke (Council, Baradel, Kosmerl & Nolan, P.A., on the brief), Annapolis, for appellee.

Argued before GARRITY, ALPERT and HARRELL, JJ.

HARRELL, Judge.

On 1 July 1988 appellee, Keeneland Associates, Inc. ("Keeneland"), obtained a judgment against appellant, William R. Dixon ("Dixon"), in the state of Kentucky. Dixon subsequently appealed the judgment against him to the Kentucky Court of Appeals where he argued for the first time that the trial court lacked personal jurisdiction to render the judgment against him. On 22 December 1989, the Kentucky Court of Appeals ruled that Dixon had waived the issue of personal jurisdiction because he failed to raise it in the trial court. The Supreme Court of Kentucky affirmed that decision.

In September 1988, while Dixon's appeals were pending in Kentucky, Keeneland sought to domesticate the July 1988 judgment in the Circuit Court for Anne Arundel County, Maryland. The circuit court stayed the proceeding pending the final outcome of the Kentucky appeals, but eventually domesticated the judgment. Thereafter, Dixon filed a Motion to Vacate the judgment on the ground that the Kentucky trial court had never obtained personal jurisdiction over him. Keeneland filed a Motion for Sanctions pursuant to Md. Rule 1-341. The Circuit Court for Anne Arundel County (Cawood, J.) denied both motions. This appeal followed.

On appeal, Dixon argues that the trial court erred in refusing to grant his Motion to Vacate. On cross-appeal, Keeneland argues that the trial court abused its discretion in denying it the opportunity to be heard on its Motion for Sanctions and later, in denying the motion.

### Facts

Appellant/Cross-Appellee, Dixon, was a general partner in Charlottesville Connection, a Maryland general partnership. In 1986, Charlottesville Connection purchased a colt at the Keeneland Yearling Sale in Kentucky. Several days later, Charlottesville Connection rejected the colt on the grounds of breach of warranty and fraud, arguing that it was lame. Keeneland refused to honor the rejection and, on or about 11 November 1986, it instituted an action in the Fayette Circuit Court in Kentucky to enforce the sale.

The Complaint named as a defendant Louise McLean d/b/a Charlottesville Connection. On or about 4 December 1986, Keeneland amended its Complaint to add Dixon, among others, as an individual defendant. McLean, who was also a partner in Charlottesville Connection, engaged the services of the law firm of Brown, Todd and Heyburn. According to the testimony of Mr. Treadway, one of the attorneys with Brown, Todd and Heyburn with responsibility for the case, the firm never asked Dixon for authority to enter an appearance on his behalf. Treadway stated, how-

ever, that it was always his understanding that Dixon had authorized McLean to engage the law firm to represent all of the partners in whatever capacity they had been sued in the Fayette Circuit Court. Although Dixon was not personally served with process, Treadway answered the Complaint and filed a Cross Claim and a Counterclaim on behalf of all of the defendants.

A trial on the merits was held in Kentucky on 11–12 May 1988. Dixon appeared at the trial, was introduced to the trial court and the jury as a defendant, and gave limited testimony. Dixon also remained in the courtroom when witnesses were instructed to leave and parties to remain. Throughout the trial Dixon sat near and consulted with Treadway. At the close of the evidence, the Kentucky trial judge conferred with counsel in chambers and expressed his intention to direct a verdict against the defendants. Dixon testified in the Maryland proceedings that he discovered for the first time that he was a party to the action when Treadway came out of the chambers conference and explained that a judgment would be entered against him. Keeneland argues however, that in his Brief in the Kentucky Court of Appeals, Dixon conceded that he first learned that the Complaint had been amended to name him individually on the night before the Kentucky trial. This contradiction notwithstanding, it is clear from the Record that Dixon did not raise the issue of personal jurisdiction in the Kentucky trial court before the court entered judgment against him. Moreover, Dixon did not raise the issue before the final judgment was entered on 1 July 1988 or in any post judgment proceeding, despite having been advised to do so by Barton T. Rogers, an attorney with Brown, Todd & Heyburn. We will include additional facts as necessary in our discussion of the issues presented.

*Discussion*

I.

█ Dixon contends that the Circuit Court of Anne Arundel County erred in denying his motion to vacate the Ken-

tucky judgment. Dixon concedes that once litigated in a sister state, a jurisdictional issue may not be relitigated in the state in which the judgment is sought to be enforced. He argues, however, that this principle is not applicable in the case *sub judice* because the jurisdictional issue has not yet been litigated. We disagree and explain.

Article IV, section 1 of the United States Constitution provides, in relevant part, that "Full Faith and Credit shall be given in each State to the public Acts, Records, and judicial Proceedings of every other State."[1] The Supreme Court has consistently recognized that, in order to fulfill this constitutional mandate, "the judgment of a state court should have the same credit, validity, and effect, in every other court of the United States, which it had in the state where it was pronounced." *Underwriters National Assurance Co. v. North Carolina Life and Accident and Health Ins. Guaranty Assoc. et al.*, 455 U.S. 691, 704, 102 S.Ct. 1357, 1365–66, 71 L.Ed.2d 558 (1982) (citations omitted).

■ Obviously, the basic structure of our nation as a union of states dictates some limitations on the Constitution's full-faith-and-credit principles. "Chief among these limitations is the caveat, ... that a 'judgment of a court in one State is conclusive upon the merits in a court in another State only if the court in the first State had power to pass on the merits—had jurisdiction, that is, to render the judgment.'" *Id. quoting Durfee v. Duke*, 375 U.S. 106, 110, 84 S.Ct. 242, 244, 11 L.Ed.2d 186 (1963). In a suit to enforce the judgment of another state the jurisdiction of the foreign court is open to judicial inquiry. *See generally Renwick v. Renwick*, 24 Md.App. 277, 330 A.2d 488 (1975); *Van Wagenberg v. Van Wagenberg*, 241 Md. 154, 215 A.2d 812 (1966). When "the matter of fact or law on which jurisdiction depends *was not litigated in the original suit* it is a

---

1. Maryland's Uniform Enforcement of Foreign Judgments Act, Md. Cts. & Jud.Proc. Code Ann. §§ 11–801 et seq., provides the mechanism by which a judgment creditor or the attorney of a judgment creditor may enforce a foreign judgment.

matter to be adjudicated in the suit founded upon the judgment." *Adam v. Saenger*, 303 U.S. 59, 62, 58 S.Ct. 454, 456, 82 L.Ed. 649 (1938) (emphasis supplied).

 Accordingly, before one state court is bound by a judgment rendered by a court in another state, it may inquire into the propriety of the foreign court's exercise of jurisdiction. If the foreign court did not have jurisdiction, full faith and credit need not be given. Similarly, the full faith and credit clause of the Constitution precludes a party from attacking a decree on jurisdictional grounds in the courts of a sister state where the party participated in the original proceedings, was accorded full opportunity to contest the jurisdictional issues, and where the decree was not susceptible to a jurisdictional attack in the courts of the rendering state. *Sherrer v. Sherrer*, 334 U.S. 343, 351–52, 68 S.Ct. 1087, 1091, 92 L.Ed. 1429 (1948). On a related note, we recognize that the due process guaranteed by the fourteenth amendment to the Constitution does not give a party the right to litigate the same questions twice. *Baldwin v. Iowa State Traveling Men's Ass'n*, 283 U.S. 522, 524, 51 S.Ct. 517, 517, 75 L.Ed. 1244 (1931).

 In the case *sub judice*, Dixon testified that before the trial court announced its decision, he was informed by Mr. Treadway that a judgment would be entered against him individually.[2] Nevertheless, Dixon failed to raise the issue of personal jurisdiction before the trial court announced its decision or entered a final judgment. Moreover, Dixon failed to pursue any post judgment proceedings in Kentucky. Instead, Dixon voluntarily, and of his own accord, chose to raise the issue of personal jurisdiction in the Kentucky Court of Appeals and Kentucky Supreme Court. The rulings of these appellate courts were clear and unambiguous—Dixon had subjected himself to the jurisdic-

---

**2.** For the purpose of this opinion we will not consider the appellee's assertion that, in his Brief filed in the Kentucky Court of Appeals, Dixon conceded that he learned that he was an individual defendant on the night before the trial.

tion of the trial court by litigating the merits of the case. He waived the right to contest the issue of personal jurisdiction by failing to raise the issue below.

As the Supreme Court has previously held, the doctrine of *res judicata* must be applied to questions of jurisdiction in cases arising in state courts involving the application of the full faith and credit clause where, under the law of the state in which the original judgment was rendered, such adjudications are not susceptible to collateral attack. *See American Surety Co. v. Baldwin*, 287 U.S. 156, 53 S.Ct. 98, 77 L.Ed. 231 (1932); *Sherrer v. Sherrer*, 334 U.S. 343, 68 S.Ct. 1087, 92 L.Ed. 1429 (1948). Here, the issue of personal jurisdiction was fully adjudicated in the Kentucky courts and Maryland courts are obligated to give full faith and credit to the Kentucky ruling. Dixon is barred by the doctrine of *res judicata* from relitigating in Maryland the issue of personal jurisdiction. Accordingly, we hold that the Circuit Court for Anne Arundel County did not err in denying Dixon's motion to vacate the judgment entered against him.

## II.

■ Keeneland filed a Motion for Sanctions against Dixon pursuant to Md. Rule 1–341 which provides:

> In any civil action, if the court finds that the conduct of any party in maintaining or defending any proceeding was in bad faith or without substantial justification the court may require the offending party or the attorney advising the conduct or both of them to pay to the adverse party the costs of the proceeding and the reasonable expenses, including reasonable attorney's fees, incurred by the adverse party in opposing it.

Keeneland requested a hearing on the motion for sanctions. When the case was called for a hearing on 16 April 1991, Keeneland attempted to argue in support of its motion. The trial court indicated that, if it decided that Dixon's contention was incorrect, the parties would be given

an opportunity to litigate the issue of sanctions. Later, the trial court prevented Keeneland from offering testimony in support of its motion, stating that it would "decide that one later." The court did not give Keeneland any further opportunity to present evidence or argue the issue of sanctions. On 2 July 1991, the trial court denied Keeneland's motion for sanctions, ruling that they were not appropriate because "the matter was at least arguable" and because the court had not found bad faith.

Maryland Rule 2–311(f) provides:

**Hearing—Other Motions.**—A party desiring a hearing on a motion, other than a motion filed pursuant to Rule 2–532, 2–533, or 2–534, shall so request in the motion or response under the heading "Request for Hearing." Except when a rule expressly provides for a hearing, the court shall determine in each case whether a hearing will be held, but it may not render a decision that is dispositive of a claim or defense without a hearing if one was requested as provided in this section.

The legislative history of Rule 2–311(f) indicates that the requirement that a hearing be held if the ruling is dispositive of a "claim" or "defense" was intended to be a "claim" or "defense" intrinsic to the underlying cause of action, *i.e.*, those dispositive "of the case," like motions for summary judgment and motions to dismiss, and not collateral claims or defenses like those involving sanctions or discovery matters. *Mari–Ane Fowler, et. al. v. Printers II, Inc.*, 89 Md.App. 448, 485–86, 598 A.2d 794 (1991). Accordingly, as we held in the *Mari–Ane Fowler* case, Rule 2–311(f) only requires a hearing if a decision denying sanctions is dispositive of a "claim" or "defense." In the case *sub judice*, we conclude that the trial judge did not err in failing to hold a hearing prior to denying the motion for sanctions requested pursuant to Rule 1–341.

JUDGMENT AFFIRMED. COSTS TO BE PAID BY APPELLANT.