915 A.2d 1030

**Willie OXENDINE, et al.**

v.

**SLM CAPITAL CORP., et al.**

**No. 00273, Sept. Term, 2006.**

Court of Special Appeals of Maryland.

Jan. 30, 2007.

Wendy A. Cartwright (Gretchen K. Athias-White, on brief), Bowie, for appellant.

William Thrush (Sidney Friedman, on brief), Baltimore, for appellee.

Panel HOLLANDER, BARBERA and MEREDITH, JJ.

MEREDITH, J.

In the Supreme Court of the State of New York, SLM Capital Corporation, appellee, obtained a default judgment against Willie and Joan Oxendine, appellants, for $332,845.02. Appellee recorded the foreign judgment against the Oxendines in the Circuit Court for Prince George's County. The Oxendines moved to vacate entry of the foreign judgment, and, in support of their motion, argued that the State of New York did not have sufficient contacts to exercise personal jurisdiction over them. The circuit court ruled that the Oxendines had waived any challenge to personal jurisdiction by failing to raise the issue in the New York proceedings, and the court therefore denied their motion. We disagree that the issue of personal jurisdiction was waived by the Oxendines' failure to participate in the New York proceedings. We reverse the circuit court's ruling on the motion to vacate, and remand the case for further proceedings.

## Facts and Procedural History

SLM Capital Corporation ("SLM") is a corporation existing under the laws of the State of New York, with its principal place of business in Melville, New York. SLM made a commercial loan in the principal amount of $250,000 to Falcon Constructors, Inc., ("Falcon"), a corporation organized and existing under the laws of the State of Florida. The Oxendines and Wendall Marshall were allegedly guarantors of the loan pursuant to a Guaranty Agreement dated March 20, 2003. The Oxendines are residents of Maryland, and Marshall is a resident of Florida. Falcon and Marshall are not parties to the Maryland proceedings.

Marshall negotiated the commercial loan documents between SLM and Falcon. Falcon defaulted under its loan obligation to SLM. Before SLM filed suit, SLM's counsel sent a letter dated February 2, 2004, to Falcon, with a copy to the Oxendines, demanding payment on the loan. According to an affidavit filed in the New York proceedings, Joseph Tripodi, SLM's counsel, thereafter received a telephone call from Willie Oxendine, who indicated that Marshall "would be handling the matter."

On April 7, 2004, SLM filed suit against Falcon, the Oxendines, and Marshall in the Supreme Court of the State of New York. The Oxendines were served at their home in Mitchellville, Maryland, with summonses from the New York court. Neither the Oxendines nor any attorney acting on their behalf filed any response to the New York suit. SLM filed a motion to enter default judgment against the defendants on August 12, 2004. Marshall, acting *pro se*, appeared via telephone for oral argument on the motion for default judgment. On November 19, 2004, the New York court granted SLM's motion for default judgment and, at some point thereafter, entered judgment in favor of SLM against Marshall and the Oxendines, jointly and severally, in the principal amount of $280,836.02, plus pre-judgment interest of $52,009, plus costs. The default judgment further provided "that plaintiffs' claims against defendant Falcon Constructors, Inc. are discontinued without prejudice and without costs."

On or about April 13, 2005, SLM filed in the Circuit Court for Prince George's County, Maryland, a request to record the foreign judgment obtained in the New York court against the Oxendines. Judgment was entered by the clerk as requested, and notice thereof was mailed to the Oxendines. The Oxendines filed in the Maryland case a motion to vacate the foreign judgment, arguing that the judgment was based upon a document that was a forgery and that the New York court did not have jurisdiction over them because they had no contacts with that state.

The Circuit Court for Prince George's County ruled that the issue of personal jurisdiction was no longer open to question

because the Oxendines had waived their opportunity to be heard on that issue in New York. The court further ruled that any allegation regarding forged documents could not be raised at this stage because, again, the Oxendines waived their opportunity to make that argument in the New York proceedings. The court denied the Oxendines' motion to vacate. This appeal followed.

## Questions Presented

The Oxendines present the following questions on appeal:

1. Did the court err as a matter of law in finding that the appellants waived their rights to challenge jurisdiction by failing to file an objection or responsive pleading in the New York case?

2. Did the court err as a matter of law in finding that the Supreme Court of New York had personal jurisdiction over the appellants?

3. Did the court err as a matter of law in finding that the appellants are barred from raising the issue of forgery because the court concluded it was intrinsic fraud?

We conclude that the circuit court erred in holding that the Oxendines waived any objection to personal jurisdiction by their failure to participate in the New York proceedings. Because the circuit court denied the motion to vacate on the basis of waiver, we reverse that ruling and remand the case for the court to take evidence and inquire into whether the New York court had a sufficient basis to exercise long-arm jurisdiction over the Oxendines. In connection with the inquiry into the jurisdiction of the New York court, the Oxendines are not barred from offering evidence to prove that they did not sign the guaranty agreement.

## Discussion

**I. Whether the Oxendines waived their rights to challenge the New York court's jurisdiction over them**

According to Article IV, § 1 of the United States Constitution, "Full Faith and Credit shall be given in each

State to the public Acts, Records, and judicial Proceedings of every other State." The Supreme Court has held that, "in order to fulfill this constitutional mandate, 'the judgment of a state court should have the same credit, validity, and effect, in every other court of the United States, which [the judgment] had in the state where it was pronounced.'" *Imperial Hotel, Inc. v. Bell Atlantic Tri–Con Leasing Corp.*, 91 Md.App. 266, 270, 603 A.2d 1371 (1992) (quoting *Underwriters Nat'l Assurance Co. v. North Carolina Life & Accident & Health Ins. Guaranty Assoc.*, 455 U.S. 691, 704, 102 S.Ct. 1357, 71 L.Ed.2d 558 (1982)). The foreign judgment is "presumed valid until it is declared invalid by a competent court." *Imperial Hotel*, 91 Md.App. at 271–272, 603 A.2d 1371.

The full faith and credit principle does have its limitations, however. For instance, in a suit to enforce a foreign judgment, the jurisdiction of the court which rendered it is "open to judicial inquiry." *Imperial Hotel*, 91 Md.App. at 270, 603 A.2d 1371. *See also Durfee v. Duke*, 375 U.S. 106, 111, 84 S.Ct. 242, 11 L.Ed.2d 186 (1963); *Adam v. Saenger*, 303 U.S. 59, 62, 58 S.Ct. 454, 82 L.Ed. 649 (1938). The Supreme Court has stated:

Chief among those limitations [of the full faith and credit doctrine] is the caveat, consistently recognized by this Court, that "a judgment of a court in one State is conclusive upon the merits in a court in another State only if the court in the first State had power to pass on the merits—had jurisdiction, that is, to render the judgment."

*Underwriters Nat'l Assurance Co.*, 455 U.S. at 704, 102 S.Ct. 1357 (quoting *Durfee*, 375 U.S. at 110, 84 S.Ct. 242). If the rendering court acted without jurisdiction, "the full faith and credit clause does not operate and the foreign judgment is of no force and effect." *Imperial Hotel*, 91 Md.App. at 270, 603 A.2d 1371. As the Supreme Court stated in *Underwriters Nat'l Assurance Co.*, 455 U.S. at 705, 102 S.Ct. 1357:

[B]efore a court is bound by the judgment rendered in another State, it may inquire into the jurisdictional basis of the foreign court's decree. If that court did not have

jurisdiction over the subject matter or the relevant parties, full faith and credit need not be given.

*Accord Superior Court v. Ricketts,* 153 Md.App. 281, 330–31, 836 A.2d 707 (2003).

■ Maryland has also adopted the Uniform Enforcement of Foreign Judgment Act, which requires Maryland courts to examine whether the foreign judgment is entitled to full faith and credit under the laws of Maryland. *See* Md.Code, Courts & Judicial Proceedings Article (1973, 2002 Repl.Vol.), §§ 11–801 *et seq.; Legum v. Brown,* 395 Md. 135, 142–43, 909 A.2d 672 (2006). That statute "places the onus on the trial judge of the 'receiving' forum to determine whether the foreign court properly exercised jurisdiction." *Imperial Hotel,* 91 Md.App. at 272, 603 A.2d 1371.

The Court of Appeals held in *Legum v. Brown* that, when a foreign judgment is properly authenticated, and the rendering court was one of general jurisdiction, "jurisdiction over the cause and the parties is to be presumed unless disproved by extrinsic evidence or by the record itself." 395 Md. at 145, 909 A.2d 672 (quoting *Adam v. Saenger,* 303 U.S. at 62, 58 S.Ct. 454). The Court of Appeals then stated that it follows from that presumption that "the burden is on a resisting party to establish that the rendering court lacked either subject matter or personal jurisdiction." *Legum,* 395 Md. at 145–46, 909 A.2d 672. This burden on the resisting party also applies even when the foreign judgment was entered by default. *Id.*

In *Legum,* the Court of Appeals confirmed, however, that when a colorable challenge to the jurisdiction of the foreign court is raised, the Maryland court is required to conduct an evidentiary hearing to determine whether the foreign court had jurisdiction to render the judgment. The Court of Appeals said in *Legum:*

Obviously, if the person resisting registration or enforcement of the foreign judgment asserts a lack of subject matter or personal jurisdiction and offers some competent evidence to support the attack, the forum court must make an inquiry and determine from the evidence whether juris-

diction existed. It cannot give full faith and credit to the judgment based solely on the presumption of regularity once competent and persuasive evidence is presented that is facially sufficient to rebut the presumption.

395 Md. at 147, 909 A.2d 672.

■ As this Court stated in *Superior Court v. Ricketts, supra,* 153 Md.App. at 332, 836 A.2d 707, there is a two-step process involved in determining whether the foreign court properly exercised jurisdiction:

First, "the trial court must determine whether the [foreign state] purports to authorize the assertion of personal jurisdiction ... to the full limits allowed by constitutional due process." Second, the Maryland court must determine "whether the exercise of jurisdiction permitted by the [foreign] statute violates the due process clause of the fourteenth amendment."

*Id.* (quoting *Imperial Hotel,* 91 Md.App. at 274, 603 A.2d 1371).

■ But there are limitations on the scope of the inquiry into whether the foreign court had the proper jurisdiction. "An independent inquiry into the foreign court's jurisdiction is not automatic, however, and when undertaken in response to a jurisdictional attack, is subject to some limitations." *Legum, supra,* 395 Md. at 145, 909 A.2d 672. For example, if the foreign court's jurisdiction was raised and fully litigated in the foreign court, then principles of res judicata preclude relitigation of the question in Maryland. *Id.* at 147, 909 A.2d 672 (The forum court does not relitigate jurisdiction if it has been fully and fairly litigated and finally decided in the court that rendered the foreign judgment.). *See also Imperial Hotel,* 91 Md.App. at 272 n. 1, 603 A.2d 1371 ("If the issue of personal jurisdiction had been raised and fully adjudicated in [the rendering state], the doctrine of res judicata could have served to bar the appellants from relitigating the issue in Maryland.").

In the instant case, the Oxendines argue that the New York court did not have personal jurisdiction over them and that the

judgment against them should not be given full faith and credit in Maryland. The Oxendines contend that, even though forged signatures purporting to be their signatures appear on the loan documents, they did not transact business in the State of New York so as to allow the New York court to have personal jurisdiction over them under that state's long-arm statute. As the party resisting the New York court's jurisdiction over them, the Oxendines have the burden of establishing, by extrinsic evidence or the record itself, that the New York court lacked proper personal jurisdiction over them. *Legum,* 395 Md. at 145–46, 909 A.2d 672. As the Court of Appeals stated in *Legum, id.* at 147, 909 A.2d 672, the Maryland court "must make an inquiry and determine from the evidence whether jurisdiction existed."

In denying the Oxendines' motion to vacate entry of the foreign judgment, the Circuit Court for Prince George's County held that the Oxendines were "afforded the opportunity to participate in the [New York] proceedings," and therefore had had an opportunity to contest the personal jurisdiction of the New York court, but failed to do so. The circuit court ruled that the Oxendines waived their right to now challenge the jurisdiction of that foreign court over them.

But there is no evidence in the record before us to show that the Oxendines did contest any of the allegations themselves or participate in the New York proceedings in any way. It is true that, after they were personally served, the Oxendines could have filed a motion to dismiss the action on the ground that the New York court did not have sufficient contacts to assert jurisdiction over them, pursuant to the Consolidated Laws of New York Annotated Civil Practice Law and Rules, Rule 3211(a). It is also true that New York Rule 3211(e) states that an objection based upon lack of personal jurisdiction is waived if, having made no objection, a person does not raise such objection in the responsive pleading. The Oxendines, however filed no responsive pleading in New York, and did not in any way litigate the issue of personal jurisdiction in that state. They now argue that the circuit court erred

as a matter of law in finding that they waived their right to challenge personal jurisdiction by failing to file an objection or responsive pleading in the New York action.

The circuit court relied on *Dixon v. Keeneland Associates, Inc.*, 91 Md.App. 308, 604 A.2d 502, *cert. denied*, 327 Md. 625, 612 A.2d 256 (1992), as authority for its holding that the Oxendines waived their right to challenge jurisdiction. The circuit court stated that, under *Dixon*, "the full faith and credit clause of the Constitution precludes a party from attacking a decree on jurisdictional grounds [in] the courts of a sister state where the party was afforded full opportunity to contest the jurisdictional issues." Our reading of *Dixon*, however, leads us to disagree with the circuit court's application of *Dixon* to the present case. In *Dixon*, the Maryland resident not only had the opportunity to litigate the jurisdictional issues in Kentucky, but did, in fact, do so.

In *Dixon*, the creditor, Keeneland Associates, obtained a judgment against William Dixon in the state of Kentucky. *Id.* at 309, 604 A.2d 502. Keeneland sought to domesticate that judgment in the Circuit Court for Anne Arundel County, Maryland. *Id.* at 310, 604 A.2d 502. Dixon filed a motion to vacate the judgment on the ground that the Kentucky trial court never obtained personal jurisdiction over him. *Id.* The circuit court denied the motion and Dixon appealed to this court. *Id.*

Although it was "clear from the Record that Dixon did not raise the issue of personal jurisdiction in the Kentucky trial court before the court entered judgment against him[,]" *id.*, we held that the circuit court did not err in denying Dixon's motion to vacate that judgment. *Id.* at 313, 604 A.2d 502. Dixon's motion was denied because Dixon, unlike the Oxendines, had attended the trial in Kentucky, and "the issue of personal jurisdiction was fully adjudicated in the Kentucky Courts." *Id.* In *Dixon*, we noted that "[a]lthough Dixon was not personally served with process," *id.* at 310, 604 A.2d 502, a Kentucky attorney answered the complaint and filed a cross claim and a counterclaim "on behalf of all of the defendants."

*Id.* Moreover, we observed that Dixon was personally involved in the Kentucky trial of the case:

> Dixon appeared at the trial, was introduced to the trial court and the jury as a defendant, and gave limited testimony. Dixon also remained in the courtroom when witnesses were instructed to leave and parties to remain. Throughout the trial Dixon sat near and consulted with [Kentucky counsel for all defendants]. At the close of the evidence, the Kentucky trial judge conferred with counsel in chambers and expressed his intention to direct a verdict against the defendants. Dixon testified in the Maryland proceedings that he discovered for the first time that he was a party to the action when [counsel] came out of the chambers conference and explained that a judgment would be entered against him.

*Id.*

After judgment was entered against him in Kentucky, Dixon appealed the judgment through two levels of Kentucky appellate courts, arguing unsuccessfully that the trial court lacked personal jurisdiction over him. The Kentucky Court of Appeals held, and the Supreme Court of Kentucky later affirmed, that Dixon waived the issue of personal jurisdiction because he failed to raise it in the trial court. *Id.* at 309, 604 A.2d 502.

Because the issue of jurisdiction was already fully adjudicated in the Kentucky courts, it could not be readjudicated in Maryland. *Id.* at 313, 604 A.2d 502. Under those circumstances, we held in the *Dixon* case, *id.*:

> [T]he issue of personal jurisdiction was fully adjudicated in the Kentucky courts and Maryland courts are obligated to give full faith and credit to the Kentucky ruling. Dixon is barred by the doctrine of *res judicata* from relitigating in Maryland the issue of personal jurisdiction.

In stark contrast to the facts in *Dixon,* the issue of personal jurisdiction over the Oxendines was not even brought up in the New York court, let alone "fully adjudicated" there.

As explained above, we have previously held that in a suit to enforce a foreign judgment in Maryland, the personal jurisdic-

tion of the court which rendered it is "open to judicial inquiry" unless fully litigated by the challenging party in the foreign court. *Imperial Hotel,* 91 Md.App. at 270, 603 A.2d 1371. We hold that the circuit court erred in finding that the Oxendines waived their right to challenge jurisdiction by failing to file an objection or responsive pleading in the New York case. If the New York court was lacking sufficient minimum contacts to exercise personal jurisdiction over the Oxendines when SLM first filed suit, then the Oxendines' failure to travel to New York to contest jurisdiction could not cure that lack of minimum contacts. *Cf. Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958)("The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State.... [I]t is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State."). It is proper for the Oxendines to now challenge whether the New York court had jurisdiction over them before having that court's judgment enforced in Maryland.

## II. Whether the New York court had jurisdiction over the Oxendines

The Supreme Court stated in *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945):

> [D]ue process requires only that in order to subject a defendant to a judgment *in personam,* if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice."

We referred to the requirement that a state have sufficient minimum contacts before exercising personal jurisdiction over an individual in *Christian Book v. Great Christian,* 137 Md. App. 367, 374, 768 A.2d 719 (2001), in which we stated:

Due process requires sufficient minimum contacts with the forum state so as " 'not [to] offend "traditional notions" of fair play and substantial justice.' " *See Columbia Briargate Co. v. First Nat'l Bank,* 713 F.2d 1052, 1057 (4th Cir.1983) (citing *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 291–92, 100 S.Ct. 559, 563–64, 62 L.Ed.2d 490, 498 (1980)). This burden is satisfied when there has been "some act [related to the cause of action alleged] by which the [non-resident] defendant purposefully avails [himself] of the privilege of conducting activities within the forum State." *Id.* (citing *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283, 1298 (1958)).

The Oxendines contend the State of New York did not have sufficient contacts to enter a judgment against them *in personam.* According to the Consolidated Laws of New York Annotated Civil Practice Law and Rules, a New York court may exercise personal jurisdiction over any non-domiciliary "who in person or through an agent ... transacts any business within the state or contracts anywhere to supply goods or services in the state." N.Y.C.P.L.R. § 302(a). The Oxendines argue that, although their alleged signatures appear on the guaranty agreement, they did not, in fact, "transact any business" in the State of New York or contract "to supply goods or services in the state." They contend, therefore, there was no basis for the State of New York to have personal jurisdiction over them.

The Circuit Court for Prince George's County found that the Supreme Court of New York "did have personal jurisdiction" over the Oxendines, but only because "they waived their right to challenge jurisdiction by failing to file an objection or a responsive pleading in that court." Because the circuit court did not reach the merits of whether or not the New York court properly exercised jurisdiction over the Oxendines pursuant to N.Y.C.P.L.R. § 302(a), we will remand this case to the circuit court to adjudicate that issue. *Imperial Hotel,* 91 Md.App. at 273, 603 A.2d 1371. As the Court of Appeals stated in *Legum,* 395 Md. at 147, 909 A.2d 672, the "court must make an inquiry and determine from the evidence whether jurisdiction exist-

ed." The mere absence of an appearance by the Oxendines in the New York action would not create long-arm jurisdiction if the requisite minimal contacts are otherwise lacking. And, even though the fraud alleged by the Oxendines would not have sufficed to set aside judgment in a case in which there was no issue as to personal jurisdiction, the Oxendines are not foreclosed from offering evidence to disprove that they ever signed any document consenting to be sued in New York.

### III. Whether the foreign judgment was obtained by fraud

■ It is black letter law in Maryland that the type of fraud which is required to authorize the reopening of an enrolled judgment is "extrinsic" fraud and not fraud which is "intrinsic" to the trial itself. *Hresko v. Hresko,* 83 Md.App. 228, 231, 574 A.2d 24 (1990) (citing *Schneider v. Schneider,* 35 Md.App. 230, 238, 370 A.2d 151 (1977)). *See also Billingsley v. Lawson,* 43 Md.App. 713, 719, 406 A.2d 946 (1979) ("[A] litigant seeking to set aside an enrolled decree must prove extrinsic fraud and not intrinsic fraud.").

■ In *Hresko v. Hresko,* 83 Md.App. at 232, 574 A.2d 24, this Court distinguished intrinsic and extrinsic fraud:

> Intrinsic fraud is defined as "[t]hat which pertains to issues involved in the original action or where acts constituting fraud were, or could have been, litigated therein." Extrinsic fraud, on the other hand, is "[f]raud which is collateral to the issues tried in the case where the judgment is rendered."

In essence, "[f]raud is extrinsic when it actually prevents an adversarial trial but it is intrinsic when it is employed during the course of the hearing which provides the forum for the truth to appear, albeit, that truth was distorted by the complained of fraud." *Billingsley,* 43 Md.App. at 719, 406 A.2d 946.

The Court of Appeals has provided examples of what would be considered extrinsic fraud:

> Where the unsuccessful party has been prevented from exhibiting fully his case, by fraud or deception practiced on

him by his opponent, as by keeping him away from court, a false promise of a compromise; or where the defendant never had knowledge of the suit, being kept in ignorance by the acts of the plaintiff; or where an attorney fraudulently or without authority assumes to represent a party and connives at his defeat; or where the attorney regularly employed corruptly sells out his client's interest in the other side,—these, and similar cases which show that there has never been a real contest in the trial or hearing of the case, are reasons for which a new suit may be sustained to set aside and annul the former judgment or decree, and open the case for a new and a fair hearing.

*Schwartz v. Merchants Mortgage Co.*, 272 Md. 305, 309, 322 A.2d 544 (1974) (quoting *United States v. Throckmorton*, 98 U.S. 61, 65–66, 25 L.Ed. 93 (1878)) (citations omitted).

The Court of Appeals in *Schwartz* also specifically stated that forged documents are normally considered intrinsic fraud:

[A]n enrolled decree will not be vacated even though obtained by the use of forged documents, perjured testimony, or any other frauds which are "intrinsic" to the trial of the case itself. Underlying this long settled rule is the principle that, once parties have had the opportunity to present before a court a matter for investigation and determination, and once the decision has been rendered and the litigants, if they so choose, have exhausted every means of reviewing it, the public policy of this State demands that there be an end to that litigation ... This policy favoring finality and conclusiveness can be outweighed only by a showing "that the jurisdiction of the court has been imposed upon, or that the prevailing party, by some extrinsic or collateral fraud, has prevented a fair submission of the controversy."

*Schwartz*, 272 Md. at 308–309, 322 A.2d 544 (citations omitted).

 In the Circuit Court for Prince George's County, SLM argued that the Oxendines were barred from attempting to prove to the court that they never signed the guaranty that gave rise to the New York judgment. SLM contends that the alleged forgeries of the Oxendines' signatures on the Guaranty

Agreement were, even if provable, intrinsic fraud that could have and should have been brought up by the Oxendines in the foreign court. *Cf. Osteoimplant Technology v. Rathe,* 107 Md.App. 114, 119–21, 666 A.2d 1310 (1995) (if the issuing court had jurisdiction, a challenge to the judgment would have to be based on extrinsic fraud rather than the merits of the controversy), *cert. denied,* 341 Md. 648, 672 A.2d 623 (1996).

Although we would agree with SLM if it were making this argument in the context of a Maryland judgment as to which there was no dispute regarding the court's in personam jurisdiction, we come to a different conclusion when the alleged fraud, if proven, would necessarily negate the foreign court's jurisdictional foundation. The New York court's purported basis for assuming jurisdiction over the Oxendines was the consent to jurisdiction provision contained in the allegedly forged documents. But for that contractual provision, it appears that the State of New York did not have the minimum contacts needed in order to exercise personal jurisdiction over the Oxendines. Because the Oxendines have not waived their right to challenge jurisdiction, they are not barred from offering evidence that the purported basis of the foreign court's jurisdiction—*i.e.,* the Guaranty Agreement—was never signed by them. The Full Faith and Credit Clause does not obligate Maryland to enforce a foreign judgment based upon a forged document if the only basis for the foreign court's jurisdiction was the forged signatures of Maryland residents.

Accordingly, we reverse the circuit court's denial of the Oxendines' motion to vacate the foreign judgment and remand the case to the circuit court to determine whether the Supreme Court of the State of New York had personal jurisdiction over the Oxendines under the principles enunciated in *International Shoe.* If the circuit court finds that the State of New York did not have a sufficient basis to exercise long-arm jurisdiction over the Oxendines, it must vacate the entry of the SLM judgment.

**JUDGMENT OF THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY REVERSED AND CASE REMAND-**

ED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS TO BE PAID BY APPEL-LEE.