June 2, 2021

**Supreme Court**

No. 2019-379-Appeal.
(PC 19-5588)

Aspen American Insurance Company   :

v.                   :

East Coast Precast & Rigging LLC   :
          et al.

NOTICE: This opinion is subject to formal revision before publication in the Rhode Island Reporter. Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone (401) 222-3258 or Email opinionanalyst@courts.ri.gov, of any typographical or other formal errors in order that corrections may be made before the opinion is published.

Aspen American Insurance Company   :

v.                                 :

East Coast Precast & Rigging LLC   :
        et al.

Present:  Suttell, C.J., Goldberg, Robinson, and Lynch Prata, JJ.

**O P I N I O N**

**Justice Robinson, for the Court.**   The defendants, Lawrence Moses, Elizabeth Moses, and Lauren Moses,[1] appeal in the wake of a Superior Court order denying their "motion to vacate" a foreign judgment (rendered in New York) in this action, which was brought in accordance with the Uniform Enforcement of Foreign Judgments Act—chapter 32 of title 9 of the Rhode Island General Laws.  On appeal, the defendants contend that the hearing justice erred in denying their motion to vacate the New York judgment because "[u]nder a claim that the signatures of the * * * Defendants were unauthorized and forged, the Indemnity Agreement [at issue] with its consent-to-jurisdiction-in-New-York provision, cannot, standing

---

[1]   While there are other defendants in this case—namely, East Coast Precast & Rigging LLC and Jeremy Moses—only Lawrence Moses, Elizabeth Moses, and Lauren Moses are involved in the appeal before this Court.

- 1 -

alone, support a finding that the New York courts had *in personam* jurisdiction over the * * * Defendants."

This appeal came before the Supreme Court pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not be summarily decided. After a close review of the record and careful consideration of the parties' arguments (both written and oral), we are satisfied that cause has not been shown and that this appeal may be decided at this time.

For the reasons set forth in this opinion, we affirm the order of the Superior Court.

# I

## Facts and Travel

The facts which form the basis of this action are largely uncontested. In relating those facts, we rely on the parties' statements filed with this Court pursuant to Article I, Rule 12A of the Supreme Court Rules of Appellate Procedure and various documents in the record.

Jeremy Moses is the son of Lawrence and Elizabeth Moses and is the former husband of Lauren Moses.[2] Jeremy owns a steel fabrication company called Heavy Metal Corp. (HMC). The plaintiff, Aspen American Insurance Co. (Aspen), issued

---

[2]     For the purposes of clarity, we will refer to the members of the Moses family by their first names. In so doing, we intend no disrespect.

"Payment and Performance Bonds" to HMC, which bonds were secured by a General Agreement of Indemnity (the Indemnity Agreement) executed in March of 2017 by HMC and by Jeremy and defendants as individual indemnitors. The Indemnity Agreement provides in pertinent part as follows:

> "Choice of Law and Forum. It is mutually agreed that this Agreement is deemed made in the State of New York and shall be interpreted, and the rights and liabilities of the parties determined, in accordance with the laws of the State of New York. Indemnitors agree that all actions or proceedings arising directly or indirectly from this Agreement shall be litigated only in courts having status within the State of New York, and consent to the personal jurisdiction and venue of any local, state or federal court located therein."

The Indemnity Agreement included the purported signatures of defendants, all of which were notarized; it further included the following acknowledgment by the notary after each of defendants' signatures: "On this 5 day of March 2017, before me personally appeared [the particular defendant whose signature appeared above the acknowledgment], to me known or proven to be the person described in and who executed the above Agreement and acknowledged that he or she executed said Agreement for the purposes, considerations and uses therein set forth as his or her free and voluntary act and deed."

Aspen has further alleged that HMC "encountered problems" in connection with certain construction projects, which resulted in Aspen being required to pay

- 3 -

claims under the bonds. Aspen then made a demand upon Jeremy and defendants for payment under the Indemnity Agreement, which payments it did not receive.

Aspen, which is headquartered in New York, filed suit in New York against defendants and others under the Indemnity Agreement. Default judgment ultimately entered against defendants in New York. That default judgment noted that defendants in this action were served, but "failed to appear [and] answer or otherwise move against the complaint * * *." The default judgment directed that an assessment of damages occur at an "inquest." Following that inquest, judgment in Aspen's favor entered in New York against defendants in the amount of $301,378.49. There is no contention that defendants were not provided proper service in the New York litigation. Aspen then filed the authenticated New York judgment in the Superior Court for Providence County on May 10, 2019. It sought enforcement of the foreign judgment pursuant to the Uniform Enforcement of Foreign Judgments Act, chapter 32 of title 9.[3]

---

[3]  The Uniform Enforcement of Foreign Judgments Act provides in pertinent part as follows:

> "A copy of any foreign judgment authenticated in accordance with the act of congress or the statutes of this state may be filed in the office of the clerk of the appropriate superior or district court. The clerk shall treat the foreign judgment in the same manner as a judgment of the superior or district court. A judgment so filed has the same effect and is subject to the same procedures,

On July 2, 2019, defendants filed in Superior Court a motion to vacate the foreign judgment for lack of personal jurisdiction, alleging that they "never signed nor authorized anyone to sign the General Agreement of Indemnity."[4] As such, according to defendants, the New York judgment was void *ab initio*. They also each submitted an affidavit stating that their signatures were forged, that they never signed the Indemnity Agreement, and that they had not authorized anyone to sign it on their behalf. Lawrence stated in his affidavit that he did not previously mention the forgery to Aspen or its counsel so as not to implicate his son Jeremy.

Aspen objected to the motion to vacate. It argued that defendants sent their 2016 and 2017 personal financial statements to Aspen through a broker or agent, thus satisfying New York's long-arm statute. Aspen further contended that defendants "engaged in actions objectively manifesting assent to the Indemnity Agreement" and that their conduct "for more than 3 years undermines their affidavits and creates an open issue to be resolved against them * * *."[5]

___

defenses, and proceedings for reopening, vacating, or staying as a judgment of the court and may be enforced or satisfied in like manner to any Rhode Island state court judgment." General Laws 1956 § 9-32-2.

[4] The defendants had filed an initial motion to vacate the foreign judgment for lack of personal jurisdiction in Superior Court on May 28, 2019. Aspen objected to that motion on June 20, 2019. The motion was ultimately denied without prejudice.

[5] In its statement filed pursuant to Article I, Rule 12A of the Supreme Court Rules of Appellate Procedure, Aspen has provided further information about the

On July 18, 2019, a hearing took place before a justice of the Superior Court. In a bench decision rendered on August 2, 2019, the hearing justice denied defendants' motion to vacate. The hearing justice began by noting that, under Rhode Island law, because defendants did not challenge personal jurisdiction in New York, they had a "heavy burden" to overturn the New York default judgment. She then detailed the applicable legal principles which would guide her determination as to whether or not New York had personal jurisdiction over defendants. Specifically, she looked to New York law with respect to alleged forgeries, and she noted that, under New York law, there is a "presumption of due execution" when a document includes the acknowledgment of a notary public, which presumption can only be rebutted by evidence of forgery that is "so clear and convincing as to amount to a moral certainty." She added that, under New York law, unsupported testimony of

---

alleged extent of defendants' involvement with the drafting and execution of the Indemnity Agreement and the New York litigation. It begins by noting that defendants sent their personal financial statements for 2016 and 2017 to Aspen through a broker or agent. It further details various 2016 and 2017 email exchanges with respect to HMC's initial business transaction with Aspen, to which emails Lawrence was a party and in which, according to Aspen, he never communicated his lack of assent to the Indemnity Agreement; one such exchange included a statement by Jeremy that his father would "cosign personally * * *." Aspen additionally mentions email communications among Aspen's New York counsel, Jeremy, and Lawrence during the pendency of the New York action, in which Lawrence questioned the extent of the Indemnity Agreement but did not deny the genuineness of his signature. Lastly, it references an alleged forty-two minute telephone call in November of 2018 among Aspen's New York counsel, Lawrence, and Jeremy concerning the issue of indemnity, during which conversation, according to Aspen, Lawrence did not suggest that his signature was forged.

interested witnesses would not be sufficient to overcome the presumption of due

execution.  Finally, she concluded as follows:

> "The Defendants simply have not met their high
> evidentiary burden in this case.  The evidence submitted,
> the three Affidavits stating that the Defendants neither
> signed the Indemnity Agreement, nor authorized Jeremy
> Moses or any other person to sign his or her name, and
> further asserting that the signature on the Indemnity
> Agreement is forged does not even make it more likely
> than not that the Indemnity Agreement was forged."

An order denying the motion to vacate entered on August 20, 2019, and

defendants filed a timely notice of appeal.

## II

## Standard of Review

"The question of personal jurisdiction presents a mixed question[ ] of law and

fact[.]"  *St. Onge v. USAA Federal Savings Bank*, 219 A.3d 1278, 1282 (R.I. 2020)

(internal quotation marks omitted).  "[W]hen deciding mixed questions of law and

fact that involve constitutional issues, our review is *de novo*."  *Hawes v. Reilly*, 184

A.3d 661, 665 (R.I. 2018) (internal quotation marks omitted); *see also St. Onge*, 219

A.3d at 1282.  Therefore, "[o]ur review of a challenge to *in personam* jurisdiction is

*de novo*."  *Hawes*, 184 A.3d at 665; *see also St. Onge*, 219 A.3d at 1282; *Cerberus*

*Partners, L.P. v. Gadsby & Hannah, LLP*, 836 A.2d 1113, 1117 (R.I. 2003).

# III

## Analysis

### A

### The Full Faith and Credit Clause & Challenging Personal Jurisdiction

> "The concept of full faith and credit is central to our system of jurisprudence. Ours is a union of States, each having its own judicial system capable of adjudicating the rights and responsibilities of the parties brought before it. Given this structure, there is always a risk that two or more States will exercise their power over the same case or controversy, with the uncertainty, confusion, and delay that necessarily accompany relitigation of the same issue. * * * Recognizing that this risk of relitigation inheres in our federal system, the Framers provided that 'Full Faith and Credit shall be given in each State to the public Acts, Records, and judicial Proceedings of every other State.'" *Underwriters National Assurance Co. v. North Carolina Life and Accident and Health Insurance Guaranty Association*, 455 U.S. 691, 703-04 (1982) (quoting U.S. Const. Art. IV, § 1).

The United States Supreme Court "has consistently recognized that, in order to fulfill this constitutional mandate, the judgment of a state court should have the same credit, validity, and effect, in every other court of the United States, which it had in the state where it was pronounced." *Id.* at 704 (internal quotation marks omitted).[6]

---

[6] In accordance with this principle, Rhode Island has enacted the Uniform Enforcement of Foreign Judgments Act in chapter 32 of title 9 of the Rhode Island General Laws. *See* footnote 3, *supra*.

- 8 -

However, the constitutional Full Faith and Credit principles are not without limitation. "[A] judgment of a court in one State is conclusive upon the merits in a court in another State only if the court in the first State had power to pass on the merits—had jurisdiction, that is, to render the judgment." *Id.* (internal quotation marks omitted). "Consequently, before a court is bound by the judgment rendered in another State, it may inquire into the jurisdictional basis of the foreign court's decree[;] [i]f that court did not have jurisdiction over the subject matter or the relevant parties, full faith and credit need not be given." *Id.* at 705.

In this case, we address whether or not the New York court that issued the judgment at issue had personal jurisdiction over defendants. On appeal, defendants reiterate their contention that New York did not have personal jurisdiction over them because their signatures on the Indemnity Agreement were forged and they never authorized such an agreement. They further posit that "[u]nder a claim that the signatures of the * * * Defendants were unauthorized and forged, the Indemnity Agreement [at issue] with its consent-to-jurisdiction-in-New-York provision, cannot, standing alone, support a finding that the New York courts had *in personam* jurisdiction over the * * * Defendants."

We have stated that "[i]f a defendant fails to appear after having been served with a complaint filed against him [or her] in another state and a default judgment is entered, he [or she] may defeat subsequent enforcement in another forum by

showing that the judgment was issued from a court lacking personal jurisdiction." *Goetz v. LUVRAJ, LLC*, 986 A.2d 1012, 1016 (R.I. 2010) (internal quotation marks omitted); *see Video Products Distributors, Inc. v. Kilsey*, 682 A.2d 1381, 1382 (R.I. 1996); *see also C & J Leasing Corp. v. Paolino*, 721 A.2d 839, 841 (R.I. 1998). "A default judgment entered by a court which lacks jurisdiction over the person of the defendant is void * * *." *Precision Etchings & Findings, Inc. v. LGP Gem, Ltd.*, 953 F.2d 21, 23 (1st Cir. 1992). Such is the case because "[p]ersonal jurisdiction * * * is [a] court's power to bring a person into its adjudicative process * * *." *Sidell v. Sidell*, 18 A.3d 499, 507 (R.I. 2011) (internal quotation marks omitted). Thus, it is clear to this Court, after a review of our precedent, that defendants in the present case properly challenged in Superior Court the personal jurisdiction of the New York court. However, we have stated that a defendant, in seeking to overturn a default judgment from another state, bears a "heavy burden" because "if the jurisdictional challenge fails, then the default becomes as final and determinative on the merits as a judgment entered after a full trial." *Goetz*, 986 A.2d at 1016; *see also Hawes*, 184 A.3d at 666.[7]

---

[7]    The defendants posit on appeal that the hearing justice failed to adhere to this Court's precedent in *Hawes v. Reilly*, 184 A.3d 661 (R.I. 2018). In our considered judgment, the hearing justice properly applied that precedent.

- 10 -

Of importance in this case is the fact that, "because the notion of personal jurisdiction represents a restriction on judicial power * * * as a matter of individual liberty[,] it can, like other such rights, be waived." *Sidell*, 18 A.3d at 507 (internal quotation marks omitted). "A party may waive his or her right to a personal-jurisdiction challenge by entering into a contract that contains a forum selection clause." *Id.* (internal quotation marks omitted).

The Indemnity Agreement in the instant case contains a forum selection clause, which, if valid, declares the intent of defendants to waive any contention as to New York not having personal jurisdiction. Thus, we, like the hearing justice, must look to whether or not sufficient evidence has been presented to successfully challenge the validity of the signatures on the Indemnity Agreement. In so doing, we must determine which state's law to apply.

The defendants posit that the hearing justice "erroneously premised [her] ruling on New York law regarding challenges to forged documents, as if the New York court *already* had personal jurisdiction * * *."[8]   (Emphasis in original.) However, this Court has stated on numerous occasions that, in determining whether

---

[8]   We note that, at oral argument before this Court, counsel for defendants contended that the issue as to what evidence is necessary to prove a forgery is a procedural issue, rather than a substantive issue, and that, therefore, we should apply Rhode Island law. No such contention appears in defendants' memorandum or supplemental memorandum filed pursuant to Rule 12A. Accordingly, it is waived. *See, e.g.*, *Wilkinson v. State Crime Laboratory Commission*, 788 A.2d 1129, 1131 n.1 (R.I. 2002).

or not a court in another state had personal jurisdiction over the parties, we look to that state's law. *See Goetz*, 986 A.2d at 1017 ("In determining whether the Minnesota District Court appropriately exercised jurisdiction in this case, we look to Minnesota law."); *see also Hawes*, 184 A.3d at 669; *Video Products Distributors, Inc.*, 682 A.2d at 1383. Thus, in the instant case, where we are concerned with whether or not New York had personal jurisdiction over defendants by virtue of the forum selection clause, we, just as did the hearing justice, must apply New York law in addressing the forgery argument presented by defendants.

## B

## New York Law with Respect to Forgery

In New York, forum selection clauses "are prima facie valid and enforceable unless shown by the resisting party to be unreasonable * * *." *Brooke Group Ltd. v. JCH Syndicate 488*, 663 N.E.2d 635, 637 (N.Y. 1996). They are deemed valid and enforceable because "they provide certainty and predictability in the resolution of disputes * * *." *Id.* at 638. Accordingly, New York law provides as follows:

> "[Forum selection clauses will not be] set aside unless a party demonstrates that the enforcement of such would be unreasonable and unjust or that the clause is invalid because of fraud or overreaching, such that a trial in the contractual forum would be so gravely difficult and inconvenient that the challenging party would, for all practical purposes, be deprived of his or her day in court * * *." *Sterling National Bank v. Eastern Shipping Worldwide, Inc.*, 826 N.Y.S.2d 235, 237 (N.Y. App. Div. 2006) (internal quotation marks omitted).

What is more, "[a] certificate of acknowledgement attached to an instrument such as a deed or a mortgage raises the presumption of due execution, which presumption * * * can be rebutted only after being weighed against any evidence adduced to show that the subject instrument was not duly executed * * *." *Kanterakis v. Minos Realty I, LLC*, 55 N.Y.S.3d 452, 454 (N.Y. App. Div. 2017) (internal quotation marks omitted). "[A] certificate of acknowledgment should not be overthrown upon evidence of a doubtful character, such as the unsupported testimony of interested witnesses, nor upon a bare preponderance of evidence, but only on *proof so clear and convincing so as to amount to a moral certainty * * *.*" *Id.* (emphasis added) (internal quotation marks omitted); *see Albany County Savings Bank v. McCarty*, 43 N.E. 427, 430 (N.Y. 1896); *see also Osborne v. Zornberg*, 792 N.Y.S.2d 183, 184 (N.Y. App. Div. 2005) ("[The] unsupported testimony of an interested witness is insufficient to rebut the presumption of due execution of [a] deed * * *.").

In *Banco Popular North America v. Victory Taxi Management, Inc.*, 806 N.E.2d 488 (N.Y. 2004), one of the parties, in opposing a motion for summary judgment, contested the authenticity of her signature on retail installment contracts. *Banco Popular North America*, 806 N.E.2d at 489. New York's highest court, the Court of Appeals, held that "[s]omething more than a bald assertion of forgery is required to create an issue of fact contesting the authenticity of a signature." *Id.* at

- 13 -

490. It held that the affidavit of the party claiming forgery was not sufficient alone to raise an issue of fact for trial. *Id.* In the course of its decision, the Court of Appeals also looked to the prelitigation conduct of the party claiming forgery in order to determine it if was "consistent with a denial of genuineness." *Id.*

It is abundantly clear to this Court, after reviewing the record before us as well as the applicable New York law, that, as the hearing justice held, defendants did not meet their burden of rebutting the presumption of due execution which attached to their signatures on the Indemnity Agreement, each of which signatures was followed by an acknowledgment as well as the signature of a notary. The only evidence defendants presented to support their claims of forgery consisted of their own affidavits. That is merely "a bald assertion of forgery" unsupported by any evidence from a disinterested party. *Id.* at 490. The defendants did not present an affidavit from the notary who notarized defendants' signatures on the Indemnity Agreement. Also, although it is not necessarily required, it is notable that they did not provide an affidavit of a handwriting expert. As such, the evidence of forgery presented by defendants does not even approach the demanding criterion of "proof so clear and convincing so as to amount to a moral certainty * * *." *Kanterakis*, 55 N.Y.S.3d at 454 (internal quotation marks omitted).

We note as well that the evidence presented by Aspen with respect to defendant's prelitigation conduct tends to suggest that any evidence of forgery is of

doubtful character. *See id.*; *see also Banco Popular North America*, 806 N.E.2d at 490. As an attachment to its memorandum in opposition to the motion to vacate in Superior Court, Aspen provided a number of affidavits. One such affidavit was from Richard L. Gemma, Esq., Aspen's Rhode Island attorney, attesting to various email exchanges he came across in the business records produced by HMC in the course of discovery; those emails illustrate that Lawrence was a party to many of the negotiations surrounding HMC's agreement with Aspen and the Indemnity Agreement. Additionally, Aspen provided an affidavit from its New York counsel, Evan E. Richards, Esq., in which he stated that he had "extensive written and telephone communications" with Lawrence and Jeremy during the pendency of the New York litigation. He also referenced a particular forty-two minute conference call with Lawrence and Jeremy during the pendency of the New York litigation. Attorney Richards then went on to state that "not once" during that phone call, or in the extensive email exchanges, did Lawrence "assert, claim, or even allude to his signature on the Indemnity Agreement being a forgery." Thus, the prelitigation conduct of Lawrence constituted further evidence rendering defendants' affidavits claiming forgery to be dubious at best.

Accordingly, applying the well-established tenets of New York law, it is clear to this Court that defendants failed to meet their burden of rebutting the presumption

of due execution which accompanies the acknowledgments and notarial signatures on the Indemnity Agreement.[9]

## C

### Defendants' Other Contentions on Appeal

The defendants contend that the hearing justice's decision "turns *in personam* jurisdiction on its head" because it concludes that "Rhode Island citizens who are summoned to a New York court based on an agreement containing the Rhode Islanders' *forged* signatures could only contest the New York court's assertion of *in personam* jurisdiction over them in the New York courts." (Emphasis in original.) They further aver that the "trial court here never examined the issue of whether New York had personal jurisdiction over the * * * Defendants in the first instance * * *."

These arguments are not even remotely well-founded. It is absolutely clear from the record in this case that defendants were given the opportunity in the Superior Court to contest whether or not the New York court at issue had personal jurisdiction over them. The hearing justice specifically stated in her decision that she was deciding the issue of whether or not New York had personal jurisdiction

---

[9]    Given our conclusion with respect to defendants' burden in this case as it pertains to the forum selection clause, we need not address whether or not defendants had sufficient minimum contacts with New York for a New York court to exercise personal jurisdiction over them separate and apart from what is specified in the forum selection clause. *See generally International Shoe Co. v. State of Washington, Office of Unemployment Compensation and Placement*, 326 U.S. 310 (1945).

- 16 -

over defendants. The defendants simply failed to meet their burden with respect to the allegedly forged signatures. Accordingly, it is fundamentally and distressingly inaccurate for defendants to assert that they were never given an opportunity to challenge the personal jurisdiction of the New York court.

Additionally, in making their arguments on appeal, defendants rely heavily on *Oxendine v. SLM Capital Corp.*, 915 A.2d 1030 (Md. Ct. Spec. App. 2007), a decision by an intermediate appellate court of a foreign jurisdiction which they contend is directly on point. We do not agree.

In *Oxendine*, suit was filed against the Oxendines in New York; and, after they did not appear, a default judgment was entered against them. *Oxendine*, 915 A.2d at 1032. When that foreign judgment was recorded in Maryland, the Oxendines moved to vacate the judgment on the ground that New York's jurisdiction was based on a document that was a forgery. *Id.* at 1033. However, it is at that juncture that the similarities between that case and the instant case end. In *Oxendine*, the Maryland Circuit Court for Prince George's County held that "the issue of personal jurisdiction was no longer open to question because the Oxendines had waived their opportunity to be heard on that issue in New York." *Id.* The Court of Special Appeals of Maryland held, on appeal, that the Circuit Court had erred because "in a suit to enforce a foreign judgment in Maryland, the personal jurisdiction of the court which rendered it is open to judicial inquiry unless fully litigated by the challenging

party in the foreign court." *Id.* at 1037 (internal quotation marks omitted). Thus, the Oxendines could contest, in Maryland, the personal jurisdiction of the New York court. *Id.*

The issue in *Oxendine* was whether or not the Circuit Court properly denied the Oxendines the opportunity to challenge in Maryland the personal jurisdiction of the New York court. The Court of Special Appeals concluded that that denial was not proper. In stark contrast, in the case before us, defendants were never denied the opportunity to contest, in Rhode Island, the personal jurisdiction of the New York court at issue. They were given every opportunity to do so, but they failed to meet their burden of proving that their signatures on the Indemnity Agreement (which included a forum selection clause) were forgeries. Thus, *Oxendine* is not even remotely on point with this case.

In conclusion, in our judgment, the defendants failed, under New York law, to meet their burden of proof with respect to the allegedly forged signatures on the Indemnity Agreement; therefore, the forum selection clause in the Indemnity Agreement is valid. Accordingly, the New York court at issue had personal jurisdiction over the defendants by virtue of the forum selection clause.

## IV

## Conclusion

Accordingly, we affirm the order of the Superior Court. We remand the record to that tribunal.


Justice Long did not participate.

## STATE OF RHODE ISLAND
## SUPREME COURT – CLERK'S OFFICE
Licht Judicial Complex
250 Benefit Street
Providence, RI  02903



## OPINION COVER SHEET

| | |
|---|---|
| **Title of Case** | Aspen American Insurance Company v. East Coast Precast & Rigging LLC et al. |
| **Case Number** | No. 2019-379-Appeal.<br>(PC 19-5588) |
| **Date Opinion Filed** | June 2, 2021 |
| **Justices** | Suttell, C.J., Goldberg, Robinson, and Lynch Prata, JJ. |
| **Written By** | Associate Justice William P. Robinson III |
| **Source of Appeal** | Providence County Superior Court |
| **Judicial Officer from Lower Court** | Associate Justice Melissa A. Long |
| **Attorney(s) on Appeal** | For Plaintiff:<br><br>Richard L. Gemma, Esq. |
| | For Defendants:<br><br>Michael T. Eskey, Esq.<br>Jennifer L. Sylvia, Esq. |