**Catherine GOETZ**

v.

**LUVRAJ, LLC et al.**

**No. 2008–270–Appeal.**

Supreme Court of Rhode Island.

Jan. 26, 2010.

Stephen R. White, Esq., Warwick, for Plaintiff.

Joel S. Chase, Esq., Warwick, for Defendant.

Present: SUTTELL, C.J., GOLDBERG, FLAHERTY and ROBINSON, JJ.

## OPINION

Justice GOLDBERG, for the Court.

This case came before the Supreme Court on December 8, 2009, pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not summarily be decided. The defendants, LUVRAJ, LLC, and Raju Chadha (Chadha and collectively defendants) appeal from the Superior Court's grant of a motion by the plaintiff, Catherine Goetz (plaintiff), to enforce a Minnesota District Court judgment pursuant to the Uniform Enforcement of Foreign Judgments Act, G.L.1956 chapter 32 of title 9. The defendants argue that the $100,878 judgment was entered improperly because the Minnesota District Court lacked personal jurisdiction over them. After reviewing the memoranda submitted by the parties and hearing counsel's arguments, we are satisfied that cause has not been shown, and thus, the appeal may be decided at this time.

## Facts and Travel

The defendant, LUVRAJ, LLC,[1] owned an internet-based jigsaw puzzle business named puzzlewarehouse.com. The business sold puzzles to customers in all fifty states; 120 patrons were located in Minnesota, accounting for roughly 2 percent of defendants' active customers. In 2005, defendants decided to sell the puzzle business and posted internet advertisements soliciting potential buyers. The plaintiff came across an internet advertisement and telephoned Chadha, who was the president of LUVRAJ, LLC, and a Massachusetts resident, to inquire about purchasing the business. According to the record, approximately 100 contacts, consisting of emails, telephone calls, and letters were exchanged between the parties in negotiating the terms of the sale. These negotiations successfully concluded when plaintiff traveled to Massachusetts, where, on June 30, 2005, she signed the contract for a purchase price of $100,000. The contract contained a Minnesota choice-of-law provision, but not a forum selection clause.[2]

After the sale, plaintiff became convinced that defendants overstated the amount of the business's sales and understated the business's expenses. The plaintiff notified defendants of these concerns in February 2006. In a March 2006 letter, defendants denied the allegations and further declared that they would not defend a lawsuit in Minnesota because the Minnesota courts lacked *in personam* jurisdiction over them. Nonetheless, on April 10, 2006, plaintiff filed suit in the Minnesota District Court, alleging breach of contract, misrepresentation, and fraud; additionally, plaintiff asked that the contract be rescinded. The defendant LUVRAJ, LLC, which since had registered as a foreign limited liability company in Rhode Island, and Chadha, who also moved to Rhode Island, were served with the complaint, but did not answer or make an appearance in Minnesota.[3] As a result, on August 28, 2006, the Minnesota District Court, having concluded that it had jurisdiction over the parties and the subject-matter, entered

---

1. According to the Massachusetts Secretary of State's records, prior to the sale, LUVRAJ, LLC, was a Massachusetts limited liability company. According to the Rhode Island Secretary of State's records, after the sale, but before the lawsuit, LUVRAJ, LLC, was registered in Rhode Island as a foreign limited liability company.

2. Article XI provides that, "[t]his Agreement shall be governed by and construed and enforced in accordance with the internal laws * * * of the State of Minnesota."

3. On June 26, 2006, plaintiff properly served process on defendants in Providence, Rhode Island.

judgment against defendants for $100,878. The court further found that the fair market value of the business was zero, and that defendants' actions constituted breach of contract, negligent misrepresentation, and fraud.

In November 2006, plaintiff sought to enforce the Minnesota judgment in Rhode Island by filing the judgment in accordance with the Uniform Enforcement of Foreign Judgments Act.[4] The defendants unsuccessfully argued to the Superior Court that the judgment was unenforceable because the Minnesota District Court lacked personal jurisdiction.[5] On May 20, 2008, the hearing justice issued a bench decision, noting that Minnesota properly had exercised its jurisdiction over the case and defendants. The hearing justice noted that defendants sold their products to 120 Minnesota customers, engaged in approximately 100 communications with plaintiff about the sale, and voluntarily agreed that Minnesota law would govern the sales contract. The hearing justice further noted that defendants' negotiations with plaintiff in Minnesota were actions directed at obtaining a commercial benefit in Minnesota and that defendants' alleged fraudulent and misleading statements should have placed them on notice that they could be sued in Minnesota. This timely appeal followed. We affirm.

## Standard of Review

■ We undertake our analysis mindful that, "[i]f a defendant fails to appear after having been served with a complaint filed against him in another state and a default judgment is entered, he may 'defeat subsequent enforcement in another forum' by showing that the judgment was 'issued from a court lacking personal jurisdiction.'" *C & J Leasing Corp. v. Paolino*, 721 A.2d 839, 841 (R.I.1998) (quoting *Video Products Distributors, Inc. v. Kilsey*, 682 A.2d 1381, 1382 (R.I.1996)). This course of action is not without risk, however, because the defendant has a heavy burden in seeking to overturn a default judgment; and, if the jurisdictional challenge fails, then the default becomes as final and determinative on the merits as a judgment entered after a full trial. *Video Products Distributors, Inc.*, 682 A.2d at 1382. Additionally, this Court will apply a *de novo* standard of review to questions of law that may implicate a constitutional right. *Pierce v. Wall*, 941 A.2d 189, 192 (R.I.2008); *State v. Wiggins*, 919 A.2d 987, 989 (R.I.2007).

## Personal Jurisdiction

■ "Under the full faith and credit clause [of the United States Constitution], a state court must enforce and give effect to a judgment of a court of a sister state, provided, upon inquiry, the court is satisfied that its sister court properly exercised * * * *in personam* jurisdiction." *Maryland Central Collection Unit v. Board of Regents for Education of the University of Rhode Island*, 529 A.2d 144, 152–53 (R.I. 1987) (emphasis added). In the case before us, defendants have failed to overcome their heavy evidentiary burden to

---

4. General Laws 1956 § 9–32–2 provides that, "[a] copy of any foreign judgment * * * may be filed in the office of the clerk of the appropriate superior or district court. The clerk shall treat the foreign judgment in the same manner as a judgment of the superior or district court."

5. The defendants' arguments included the contention that the business sale was an improper contact for Minnesota to exercise jurisdiction, the contention that the choice-of-law clause had no place in the court's inquiry, the fact that only 2 percent of its customers included Minnesota residents, and the fact that the contract was not signed in Minnesota.

defeat Minnesota's exercise of personal jurisdiction.

■ In determining whether the Minnesota District Court appropriately exercised jurisdiction in this case, we look to Minnesota law.[6] The Minnesota long-arm statute confers jurisdiction over nonresident individuals and foreign corporations, if the nonresident defendant "commits any act outside Minnesota causing injury or property damage in Minnesota * * *." Minn. Stat.Ann. § 543.19 subd.1(4) (West 2008) (conferring jurisdiction over nonresidents, subject to exceptions inapplicable here). The Minnesota courts have interpreted the state's long-arm statute to extend the state's personal jurisdiction to the limits of the Due Process Clause of the federal constitution. *State ex rel. Humphrey v. Granite Gate Resorts, Inc.*, 568 N.W.2d 715, 718 (Minn.Ct.App.1997); *Valspar Corp. v. Lukken Color Corp.*, 495 N.W.2d 408, 410 (Minn.1992). "[D]ue process requires that a nonresident defendant have certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *V.H. v. Estate of Birnbaum*, 543 N.W.2d 649, 656 (Minn.1996) (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945)). To establish minimum contacts with Minnesota, a nonresident defendant must purposefully avail itself of the privilege of conducting activities within Minnesota, "such that [it] should reasonably anticipate being haled into court there." *Id.* at 656–57 (quoting *Larson v. Dunn*, 460 N.W.2d 39, 44 (Minn.1990)).

■■ There is, however, a distinction between general and specific *in personam* jurisdiction. *Marshall v. Inn on Madeline Island*, 610 N.W.2d 670, 674 (Minn.Ct.App. 2000) (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 nn. 8–9, 104 S.Ct. 1868 (1984)). "General jurisdiction arises when a defendant has 'continuous and systematic' contacts with the forum state." *Id.* (quoting *Helicopteros Nacionales*, 466 U.S. at 415–16, 104 S.Ct. 1868). "Specific jurisdiction exists when the cause of action arises out of or is related to the defendant's contacts with the forum." *Id.* (citing *Helicopteros Nacionales*, 466 U.S. at 414 n.8, 104 S.Ct. 1868). Although LUVRAJ's customer list included approximately 120 Minnesota residents, comprising approximately 2 percent of its total active customers, we question whether this number amounts to "continuous and systematic" contacts within Minnesota such that the state could exercise general *in personam* jurisdiction over defendants. However, because the cause of action in the case at bar arose from defendants' contacts with Minnesota and related to the sale of the internet-based business, we are satisfied that these contacts support the exercise of specific *in personam* jurisdiction over these defendants by the Minnesota court.

### Minnesota's Five–Factor Jurisdiction Test

■ Minnesota consistently employs a five-factor test to determine whether the state has personal jurisdiction over a nonresident party.[7] *Estate of Birnbaum*, 543

---

6. The parties also have acknowledged in their briefs that Minnesota law governs the issue of personal jurisdiction.

7. In a series of cases, Minnesota has specifically examined each factor *seriatim;* we shall do likewise. *See, e.g., Juelich v. Yamazaki*

*Mazak Optonics Corp.*, 682 N.W.2d 565, 573 (Minn.2004); *Marshall v. Inn on Madeline Island*, 610 N.W.2d 670, 674 (Minn.Ct.App. 2000); *State ex rel. Humphrey v. Granite Gate Resorts, Inc.*, 568 N.W.2d 715, 718 (Minn.Ct. App.1997).

N.W.2d at 657; *see also Marshall,* 610 N.W.2d at 674; *Granite Gate Resorts, Inc.,* 568 N.W.2d at 718. This inquiry centers on: "(1) the quantity of the defendant's contacts; (2) the nature and quality of the defendant's contacts; (3) the connection between the cause of action and the defendant's contacts; (4) the state's interest in providing a forum; and (5) the convenience of the parties." *Granite Gate Resorts, Inc.,* 568 N.W.2d at 718. Minnesota case law demonstrates that these quantitative and qualitative factors and their relationship to the cause of action largely control the analysis. "Any doubt regarding the sufficiency of contacts to support the exercise of personal jurisdiction should be resolved in favor of finding jurisdiction." *Marshall,* 610 N.W.2d at 674; *see also Dent–Air, Inc. v. Beech Mountain Air Service, Inc.,* 332 N.W.2d 904, 907 (Minn. 1983). We will address each factor in turn; that is, quantity, quality, connection with the claim, as well as the forum state's interest and the parties' convenience.

### 1. Quantity of Contacts

 The number of contacts by defendants with the forum state with respect to the subject of the suit or otherwise is the first point of inquiry. In the case at bar, defendants' numerous contacts with Minnesota, through product sales, advertisements, and negotiations with plaintiff concerning the sale of the business, support a finding of personal jurisdiction.

The Minnesota Court of Appeals previously has held that a sufficient number of contacts to establish personal jurisdiction arose when persons in Minnesota called a nonresident defendant to inquire about the defendant's internet gambling website. *Granite Gate Resorts, Inc.,* 568 N.W.2d at 717, 718 (acknowledging that a Minnesota consumer investigator dialed nonresident defendant's toll-free phone number). The court also noted that the mailing list of the nonresident defendant's gambling website included the name and address of at least one Minnesota resident, and that Minnesota residents accessed defendant's website from computers located in Minnesota. *See id.* at 718–19. A few years later, the same court recognized that a nonresident defendant engaged in interstate contract negotiations, submitted to Minnesota's jurisdiction, in part, due to his numerous contacts with resident customers. *See Viking Engineering & Development Inc. v. R.S.B. Enterprises, Inc.,* 608 N.W.2d 166, 170 (Minn.Ct.App.2000). In *Viking Engineering & Development, Inc.,* a case similar to the present controversy, the defendant never physically entered Minnesota, but his multiple phone calls and faxes to the Minnesota residents to promote his businesses's products solidified the court's decision that it had proper jurisdiction over the defendant. *Id.* The fact that the defendant actively engaged in interstate contract negotiations with the plaintiff "constituted specific business activity" to satisfy the Due Process Clause. *Id.* Additionally, the Minnesota Supreme Court has held that Minnesota was the proper jurisdiction of a nonresident defendant who had a "plethora of indirect contacts" with its residents. *Rostad v. On–Deck, Inc.,* 372 N.W.2d 717, 721 (Minn.1985). The court recognized that the defendant's marketing efforts, which were calculated at advertising to a nationwide audience, included "numerous contacts" with Minnesota residents through its distributors. *Id.*

In the case at bar, plaintiff, a Minnesota resident, called the nonresident defendants to inquire about defendants' internet advertisement about the puzzle business. The plaintiff and nonresident defendants also exchanged approximately 100 emails, telephone calls, and letters. Additionally, defendants' customer list included the names and addresses of 120 Minnesota

residents that constituted approximately 2 percent of defendants' active customers. We conclude that defendants' contacts with Minnesota are sufficient to satisfy the quantity of contacts factor for personal jurisdiction.

### 2. Nature and Quality of Contacts

■■■■ The second factor involves the nature and quality of the contacts between the parties. The nature of contact in this case—solicitation of business in the forum state—supports Minnesota's exercise of personal jurisdiction. Even in cases in which the quantity may be lacking, the nature and quality of the contacts, although few, nonetheless can be dispositive. *Granite Gate Resorts, Inc.*, 568 N.W.2d at 719; *see also Trident Enterprises International, Inc. v. Kemp & George, Inc.*, 502 N.W.2d 411, 415 (Minn.Ct.App.1993). In *Marshall*, 610 N.W.2d at 673–74, a nonresident corporation owned an out-of-state vacation property that it leased to the public, including many Minnesota residents. Referring to this second factor, the quality of the contacts, the Minnesota Court of Appeals noted that there is a distinction between nonresident sellers of goods to Minnesota residents and nonresident purchasers of goods from Minnesota residents. *Id.* at 675 (recognizing that there is a higher quality to the acts of nonresidents that reach into Minnesota to do business). The court in *Marshall* also noted that, "[j]urisdiction may be proper when a nonresident's contacts are directed at attaining a commercial benefit in Minnesota." *Id.* (concluding that jurisdiction was proper because defendant directly solicited and sold goods to Minnesota residents). Furthermore, the Minnesota Court of Appeals established that nonresident defendants who know that their messages will be broadcasted in the state are subject to suit in Minnesota. *Granite Gate Resorts, Inc.*, 568 N.W.2d at 719–20 (acknowledging that

radio and television advertisements confer jurisdiction and equating internet advertisements similar thereto).

In the case at bar, defendants sold goods to 120 Minnesota residents, thus, obtaining a commercial benefit in Minnesota. Although this number represents only approximately 2 percent of the business's active customers, defendants also advertised the sale of the business to Minnesota residents, intending to solicit potential buyers. When defendants placed the internet advertisement, they knew that the advertisement would be broadcasted to all fifty states including Minnesota, viewed by residents of Minnesota, and accessible by computers in Minnesota. Accordingly, we are of the opinion that the nature and quality of defendants' contacts with Minnesota supports the assertion of personal jurisdiction.

### 3. Connection Between Cause of Action and Contacts

■■■ The third factor is whether the cause of action stems from the nonresident's contact with the state. Here, defendants' contacts and interactions with Minnesota residents substantially relate to plaintiff's cause of action and supports Minnesota's exercise of jurisdiction over defendants. The Minnesota Court of Appeals stated that a nonresident who enters into a contract with a Minnesota resident would be subject to Minnesota's jurisdiction if the cause of action involves the contract. *Marshall*, 610 N.W.2d at 674, 676 (noting that "entering into a contract with a Minnesota resident can justify the exercise of [personal] jurisdiction but only where the dispute involves the contract").

The case at bar involves allegations of breach of contract, misrepresentation, and fraud. All plaintiff's allegations stem from the information contained in the emails, telephone calls, and letters sent to and

from Minnesota between nonresident defendants and plaintiff to negotiate the terms of the sale. Clearly, plaintiff's cause of action arises from defendants' assertions and misrepresentations about the sale of the business that is the subject of the Minnesota lawsuit. We need go no further concerning this factor.

#### 4. State's Interest

■ The fourth factor pertains to Minnesota's interest in adjudicating the case within its judicial system. This factor, although secondary to the first three factors, also weighs in favor of Minnesota's assertion of jurisdiction over defendants. *See Granite Gate Resorts, Inc.,* 568 N.W.2d at 721 (noting this factor alone cannot confer jurisdiction, but it can support jurisdiction in light of the other three factors). There is no doubt that Minnesota has a strong interest in providing its citizens with a forum to seek redress from alleged wrongful conduct. *Marshall,* 610 N.W.2d at 676; *Estate of Birnbaum,* 543 N.W.2d at 658 (noting that Minnesota has a legitimate interest in providing forums for its citizens to address tortious conduct). In the case at bar, nonresident defendants were alleged to have committed tortious acts against plaintiff, a Minnesota citizen, relating to the sales contract. These alleged tortious misrepresentations should have put defendants on notice that they could be subject to suit in Minnesota.

#### 5. Convenience of Parties

The fifth factor concerns the convenience of the parties and the burden of having to litigate the case in Minnesota. The Minnesota Supreme Court has held that, the convenience of the parties is "of minor interest" compared with the other factors. *Rostad,* 372 N.W.2d at 722. Although we recognize that it may not be ideal for a Rhode Island resident and president of a Massachusetts limited liability

corporation to litigate a case in Minnesota, this factor does not alter our conclusion that Minnesota properly exercised jurisdiction over defendants in this case. *See Granite Gate Resorts, Inc.,* 568 N.W.2d at 721 (noting that nonresident defendants cannot claim inconvenience as an excuse to avoid personal jurisdiction, particularly since Minnesota has an interest in regulating advertisements).

### Choice–of–Law Provision

■ Additionally, it is undisputed that defendants agreed to a choice-of-law clause in the contract, which requires that the contract would be governed by and enforced in accordance with Minnesota law. The United States Court of Appeals for the Eighth Circuit, applying Minnesota law, previously has held that choice-of-law clauses are an important factor in determining whether nonresidents avail themselves to the jurisdiction of the forum state. *Wessels, Arnold, & Henderson v. National Medical Waste, Inc.,* 65 F.3d 1427, 1434 (8th Cir.1995); *see also Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 482, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985) (recognizing that there is no reason to ignore the defendant's consent to choice-of-law provisions when deciding proper jurisdiction). In *Wessels,* the Eighth Circuit held that the freely negotiated choice-of-law law provision, combined with the nonresident defendant's mail and telephone contacts into Minnesota, were both relevant and significant in the court's determination that Minnesota properly asserted personal jurisdiction over the nonresident defendant. *Wessels,* 65 F.3d at 1434.

In the case at bar, defendants acknowledged and signed a contract that clearly states that Minnesota law governs and controls the contract that is the subject of this dispute. Although standing alone, this provision could not confer jurisdiction

on the Minnesota courts, the choice-of-law clause taken together with defendants' emails, telephone calls, and letters with a Minnesota plaintiff, weigh in favor of Minnesota asserting personal jurisdiction over the nonresident defendants.

### Conclusion

The defendants have not made a sufficient showing to justify why the courts of this state should not accord full faith and credit to the Minnesota judgment. It was reasonable for the defendants to be sued in Minnesota, and we decline to interfere with this properly entered default judgment from our sister-state. We note that the only involvement Rhode Island has in this case is the happenstance of the defendants relocating here after the transaction was consummated.

For the reasons stated in this opinion, the judgment of the Superior Court is affirmed. The record may be remanded to the Superior Court.