January 20, 2022

**Supreme Court**

No. 2018-143-Appeal.
(PC 17-2420)

Alison N. Martins, Individually and as　　：
　Co-Executrix of the Estate of John
　　　　　Martins　　　　　：


　　　　　　v.　　　　　：


Bridgestone Americas Tire Operations,　：
　　　　LLC, et al.

NOTICE:　This opinion is subject to formal revision before publication in the Rhode Island Reporter.　Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone (401) 222-3258 or Email opinionanalyst@courts.ri.gov, of any typographical or other formal errors in order that corrections may be made before the opinion is published.

Alison N. Martins, Individually and as   :
   Co-Executrix of the Estate of John
                    Martins                        :

                    v.                             :

Bridgestone Americas Tire Operations,  :
                LLC, et al.

Present: Suttell, C.J., Robinson, and Lynch Prata, JJ.

**O P I N I O N**

**Chief Justice Suttell, for the Court.**  This case concerns the authority of the

Superior Court to exercise jurisdiction over claims brought against foreign corporate

defendants based on injury, resulting in death, to a Rhode Island resident following

an accident that occurred outside of Rhode Island.  On appeal, the plaintiff, Alison

N. Martins, individually and as co-executrix of the Estate of John Martins, contests

the Superior Court's entry of partial final judgment in accordance with Rule 54(b)

of the Superior Court Rules of Civil Procedure and the dismissal of the action for

lack of personal jurisdiction under Rule 12(b)(2) as to the defendants, Bridgestone

Americas Tire Operations, LLC (BATO); Bridgestone Americas, Inc. (BAI); and

Bridgestone Retail Operations, LLC (BRO) (collectively the Bridgestone

defendants).  The plaintiff submits that the hearing justice erred in dismissing the

- 1 -

claims against the Bridgestone defendants based on a lack of personal jurisdiction. The plaintiff also argues that the hearing justice erred in denying her request to conduct jurisdictional discovery. For the reasons set forth herein, we affirm the partial final judgment of the Superior Court and its order denying the plaintiff's request to conduct jurisdictional discovery.

**I**

**Facts and Travel**

The underlying facts of this case are set forth in plaintiff's second amended complaint and in the submissions of the parties before this Court and the Superior Court. On or about September 23, 2005, Sterry Street Auto Sales, Inc. d/b/a Sterry Street Towing (Sterry Street), a Massachusetts corporation owned by the decedent, John Martins, contracted with defendant Patriot Sales and Service, Inc. (Patriot), a Massachusetts corporation and dealer of tow trucks, to act as a broker and to supply Sterry Street with a Peterbilt Model 379 rotator truck (the rotator truck).[1]

On September 26, 2005, Patriot completed a purchase order with defendant Miller Industries Towing Equipment, Inc. (Miller Industries), to purchase the rotator portion of the rotator truck. The purchase order included Patriot's Rhode Island location as the "ship to" address. According to plaintiff's brief, in October 2005,

---

[1] In her second amended complaint, plaintiff indicates that Sterry Street "contracted with Patriot Sales and Service of 531 Main Street, Pawtucket, Rhode Island[,]" which appears to have been Patriot's Rhode Island location.

- 2 -

Patriot contracted with defendant Peterbilt of Connecticut, Inc. d/b/a Peterbilt of Rhode Island, Inc. (Peterbilt Rhode Island), a Connecticut corporation and a subsidiary of defendant PACCAR, Inc. (PACCAR), to supply the cab and chassis of the rotator truck. The contract included a request for installation of Bridgestone M844 tires on the front axle. The shipping destination for the cab and chassis was the Miller Industries plant in Tennessee. On November 30, 2005, defendant Peterbilt Motors Company (Peterbilt Motors), a division of PACCAR, issued a certificate of origin for the rotator truck to Peterbilt Rhode Island.

In May 2006, Sterry Street issued a partial payment to Patriot for the rotator truck, and three months later Patriot sold the rotator truck to Sterry Street. Despite statements on certain documentation, the rotator truck was not actually shipped to Patriot's Rhode Island location; rather, representatives of Sterry Street traveled to the Miller Industries plant in Tennessee and drove the rotator truck to Massachusetts in August 2006.

On September 4, 2015, the decedent drove the rotator truck from Attleboro, Massachusetts, through Rhode Island, and into Connecticut, to assist in the recovery of a school bus. After completing the job and before the decedent crossed the Connecticut border into Rhode Island, one of the Bridgestone M844 tires located on the left front of the rotator truck's cab "suffered a belt and/or tread separation[.]" The decedent lost control of the vehicle, veered off the highway, and struck a tree.

The rotator truck's diesel fuel then caught fire and the decedent suffered severe burns. He was airlifted from the scene of the accident in Connecticut to Rhode Island Hospital, where he died on September 27, 2015.

According to the Bridgestone defendants, Bridgestone M844 tires have been manufactured by BATO only at its plant in Tennessee. The affidavit of Bridgestone employee Brian Queiser, provided by the Bridgestone defendants, indicates that BATO likely designed the subject tire at its facilities in Ohio. The subject tire was delivered directly to Peterbilt's plant in Tennessee, where it was installed as original equipment on the rotator truck. The rotator truck was then shipped, with the tires attached, to Miller Industries in Tennessee. The subject tire remained on the rotator truck until the incident giving rise to this case occurred.

On May 24, 2017, plaintiff filed the instant action; she thereafter filed a second amended complaint against several defendants, including the Bridgestone defendants, for negligence, strict liability, breach of warranties, and punitive damages.[2] Subsequently, the Bridgestone defendants filed a motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2). The plaintiff objected to the motion to dismiss and requested jurisdictional fact discovery on the personal jurisdiction question under Rule 12(b)(2).

---

[2] The six other defendants named in the second amended complaint were Peterbilt Rhode Island, Peterbilt Motors, PACCAR, Patriot, and Miller Industries, as well as "ABC Corporation."

A hearing on the matter was held on November 21, 2017. On March 8, 2018, the hearing justice issued a written decision granting the Bridgestone defendants' motion to dismiss for lack of personal jurisdiction and denying plaintiff's request for jurisdictional fact discovery. Partial final judgment pursuant to Rule 54(b) was entered in favor of the Bridgestone defendants on April 2, 2018. The plaintiff filed a timely notice of appeal on April 16, 2018.

## II

### Issues on Appeal

On appeal, plaintiff first submits that the hearing justice erred in determining that the Superior Court did not have specific personal jurisdiction over the Bridgestone defendants.[3] The plaintiff's second contention is that the hearing justice erred when he denied plaintiff's request to conduct jurisdictional fact discovery. We address these claims of error *seriatim*.

---

[3] Although argued before the Superior Court, plaintiff does not press the issue of general personal jurisdiction on appeal, noting only that "[p]laintiff was precluded from discovering whether any of the Bridgestone defendants conduct 'continuous and systematic' general business in Rhode Island to render them effectively * * * 'at home[.]'" Therefore, we need not consider here whether the Superior Court could assert general personal jurisdiction over the Bridgestone defendants.

**A**

**Personal Jurisdiction**

**Standard of Review**

"When reviewing a challenge to personal jurisdiction, 'we examine the pleadings, accept the facts alleged by the plaintiff as true, and view disputed facts in the light most favorable to the plaintiff.'" *St. Onge v. USAA Federal Savings Bank*, 219 A.3d 1278, 1282 (R.I. 2019) (brackets omitted) (quoting *Cassidy v. Lonquist Management Co., LLC*, 920 A.2d 228, 232 (R.I. 2007)). Questions of personal jurisdiction present a "mixed question of law and fact." *Id.* (brackets omitted) (quoting *Hawes v. Reilly*, 184 A.3d 661, 665 (R.I. 2018)). "While mixed questions of law and fact usually require more deferential treatment to the trial justice's findings of fact, 'when deciding mixed questions of law and fact that involve constitutional issues, our review is *de novo*.'" *Id.* (quoting *Hawes*, 184 A.3d at 665). Accordingly, we review a challenge to personal jurisdiction *de novo*. *See, e.g.*, *id.*

**Discussion**

To overcome a defendant's motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2), the plaintiff must allege sufficient facts to establish a prima facie case of personal jurisdiction. *See Cassidy*, 920 A.2d at 231-32. In reviewing the record, we examine the pleadings, accept the facts alleged by the plaintiff as true,

and view disputed facts in the light most favorable to the plaintiff. *See St. Onge*, 219 A.3d at 1282; *Cassidy*, 920 A.2d at 232.

"To establish a *prima facie* showing of personal jurisdiction in Rhode Island, a plaintiff's allegations must satisfy the demands of Rhode Island's long-arm statute, G.L. 1956 § 9-5-33." *St. Onge*, 219 A.3d at 1282 (brackets omitted) (quoting *Cassidy*, 920 A.2d at 232). That statute provides that "[e]very foreign corporation * * * that shall have the necessary minimum contacts with the state of Rhode Island, shall be subject to the jurisdiction of the state of Rhode Island * * * in every case not contrary to the provisions of the constitution or laws of the United States." Section 9-5-33(a). This Court has interpreted § 9-5-33 to permit the exercise of jurisdiction over a nonresident defendant to the fullest extent allowed by the United States Constitution. *See St. Onge*, 219 A.3d at 1283.

Before this Court, plaintiff asserts that the Superior Court has specific jurisdiction over the Bridgestone defendants. The determination of whether there is specific jurisdiction over a defendant requires a two-step inquiry: (1) determining whether the defendant has sufficient minimum contacts with the forum state and (2) determining whether the litigation "offend[s] traditional notions of fair play and substantial justice." *St. Onge*, 219 A.3d at 1284 (quoting *Rose v. Firstar Bank*, 819 A.2d 1247, 1250 (R.I. 2003)).

With regard to minimum contacts, we have said that "[a] party makes a successful *prima facie* showing of specific jurisdiction over a defendant where 'the claim sufficiently relates to or arises from any of a defendant's purposeful contacts with the forum.'" *St. Onge*, 219 A.3d at 1284 (quoting *Cassidy*, 920 A.2d at 233). "The defendant must have 'performed some act by which it purposefully availed itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws.'" *Id.* (quoting *Cassidy*, 920 A.2d at 233). In reviewing a defendant's contacts with the forum, this Court looks to the "quality and quantity" of the contacts, *St. Onge*, 219 A.3d at 1285 (quoting *Rose*, 819 A.2d at 1250), and whether "the defendant's conduct and connection with the forum [s]tate are such that [the defendant] should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).

"When there is no such connection to the forum state, specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the state." *St. Onge*, 219 A.3d at 1285 (brackets omitted) (quoting *Bristol-Myers Squibb Company v. Superior Court of California, San Francisco County*, 137 S. Ct. 1773, 1781 (2017)). Furthermore, "[s]pecific jurisdiction must rest on a defendant's voluntary contact with the forum and not on 'the unilateral activity of another party or a third person.'" *Knox v. MetalForming, Inc.*, 914 F.3d 685, 692 (1st Cir. 2019) (quoting *Burger King Corporation v. Rudzewicz*, 471 U.S. 462, 475 (1985)).

We begin by addressing plaintiff's contention that the hearing justice committed an error of law when he analyzed each of the Bridgestone defendants' contacts with Rhode Island "separately" rather than jointly. The plaintiff cites no caselaw to support its contention that a court should analyze the contacts of *separate entities* in the aggregate for purposes of specific personal jurisdiction. *See State v. Florez*, 138 A.3d 789, 798 n.10 (R.I. 2016) ("It is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones. Judges are not expected to be mindreaders. Consequently, a litigant has an obligation to spell out its arguments squarely and distinctly, or else forever hold its peace." (deletions omitted) (quoting *United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990))).

Furthermore, plaintiff seems to indicate in her own pleadings that each of the Bridgestone defendants were separate and distinct entities by laying out each of the Bridgestone defendants' place of incorporation and/or principal place of business in her second amended complaint: BATO is incorporated in Delaware and has its principal place of business in Tennessee; BAI is incorporated in Nevada and has its principal place of business in Tennessee; and BRO is incorporated in Delaware and has its principal place of business in Illinois. Therefore, we conclude that the hearing justice did not err when he analyzed the contacts of each of the Bridgestone defendants separately.

We next assess whether plaintiff's claims "sufficiently relate[] to or arise[] from any of [the Bridgestone] defendant[s'] purposeful contacts with the forum." *St. Onge*, 219 A.3d at 1284 (quoting *Cassidy*, 920 A.2d at 233). The plaintiff asserts that this relatedness requirement is satisfied here because, according to plaintiff, there is a nexus between Rhode Island, plaintiff's claim for wrongful death, and the Bridgestone defendants. Specifically, plaintiff points to the fact that the decedent was a Rhode Island resident who died in Rhode Island; the subject tire was purchased by two Rhode Island companies, Peterbilt Rhode Island and Patriot;[4] and the "Bridgestone defendants[] [had] extensive contacts with Rhode Island and their intent [was] to conduct business in Rhode Island."

In support of her argument, plaintiff highlights both the recent United States Supreme Court decision in *Ford Motor Company v. Montana Eighth Judicial District Court*, 141 S. Ct. 1017 (2021), and the stream-of-commerce theory first set forth by the Supreme Court in *World-Wide Volkswagen*, cited *supra*, to support her assertion that her claims sufficiently relate to the Bridgestone defendants' purposeful contacts with the forum. In support of this contention, plaintiff argues that in *Ford*, the United States Supreme Court "considered and unanimously rejected the very

---

[4] We pause to note that plaintiff's framing of Patriot as a Rhode Island company is inconsistent with the allegation contained in plaintiff's second amended complaint that Patriot "is a foreign for-profit corporation organized and existing under the laws of Massachusetts with its principal place of business in the Commonwealth of Massachusetts."

- 10 -

same arguments raised by the Bridgestone defendants[.]" Her reliance on *Ford* is misplaced. Assuming, without deciding, that the Bridgestone defendants have *each* purposefully availed themselves of the laws of Rhode Island, our review of the record of this case and the relevant caselaw, including the Supreme Court's recent decision in *Ford*, leads us to conclude that plaintiff's claims do not "relate to" the Bridgestone defendants' contacts with Rhode Island. *See Ford*, 141 S. Ct. at 1026.

In *Ford*, the Supreme Court addressed whether Montana and Minnesota state courts could exercise specific personal jurisdiction over the Ford Motor Company in products-liability suits stemming from car accidents in each of the respective states. *Ford*, 141 S. Ct. at 1022, 1023. In both cases, the car accident occurred in the state where the suit was brought, and the victim was a resident of that state. *Id.* at 1022. Although Ford conceded that it had purposefully availed itself of the laws of each state by doing "substantial business" in the states, it contended that jurisdiction was improper because "the particular car involved in the crash was not first sold in the forum [s]tate, nor was it designed or manufactured there." *Id.* at 1022, 1026.

Ford claimed instead that its activities in the forum states did "not sufficiently connect to the suits, even though the resident-plaintiffs allege[d] that Ford cars malfunctioned in the forum [s]tates." *Ford*, 141 S. Ct. at 1026. "In Ford's view, the needed link must be causal in nature: Jurisdiction attaches 'only if the defendant's forum conduct *gave rise* to the plaintiff's claims.'" *Id.* The Supreme Court, however,

disagreed with what it classified as Ford's "causation-only" approach, noting that the approach found "no support in [the Supreme] Court's requirement of a 'connection' between a plaintiff's suit and a defendant's activities." *Id.* (quoting *Bristol-Meyers*, 137 S. Ct. at 1776). The Supreme Court then articulated the following:

> "None of our precedents has suggested that only a strict causal relationship between the defendant's in-state activity and the litigation will do. As just noted, our most common formulation of the rule demands that the suit 'arise out of *or relate to* the defendant's contacts with the forum.' [*Bristol-Meyers*,] 137 S. Ct. at 1780[.] The first half of that standard asks about causation; but the back half, after the 'or,' contemplates that some relationships will support jurisdiction without a causal showing. That does not mean anything goes. In the sphere of specific jurisdiction, the phrase 'relate to' incorporates real limits, as it must to adequately protect defendants foreign to a forum. But again, we have never framed the specific jurisdiction inquiry as always requiring proof of causation—*i.e.*, proof that the plaintiff's claim came about because of the defendant's in-state conduct. * * * So the case is not over even if, as Ford argues, a causal test would put jurisdiction in only the [s]tates of first sale, manufacture, and design. A different [s]tate's courts may yet have jurisdiction, because of another 'activity [or] occurrence' involving the defendant *that takes place in the [s]tate.*" *Ford*, 141 S. Ct. at 1026 (second emphasis added).

The Supreme Court then, consistent with dicta laid out in *World-Wide Volkswagen*, held that a state court may exercise personal jurisdiction over a nonresident defendant "[w]hen a company like Ford serves a market for a product in a [s]tate and

that product causes injury *in the* [*s*]*tate* to one of its residents[.]" *Id.* at 1022

(emphasis added). The Supreme Court in *Ford* ultimately held that the plaintiffs'

claims sufficiently related to Ford's contacts with the forum states to support specific

personal jurisdiction because the "resident-plaintiffs allege[d] that they suffered *in-*

*state injury* because of defective products that Ford extensively promoted, sold, and

serviced in Montana and Minnesota." *Id.* at 1032 (emphasis added).

Previously, the Supreme Court in *World-Wide Volkswagen* stated that,

> "if the sale of a product of a manufacturer or distributor
> * * * is not simply an isolated occurrence, but arises from
> the efforts of the manufacturer or distributor to serve,
> directly or indirectly, the market for its product in other
> [s]tates, it is not unreasonable to subject [a manufacturer
> or distributer] to suit in one of those [s]tates if its allegedly
> defective merchandise has *there* been the source of injury
> to its owners or to others." *World-Wide Volkswagen*, 444
> U.S. at 297 (emphasis added).

The phrase "has *there* been the source of injury" in *World-Wide Volkswagen*

suggests that the product has both been directed toward the forum state *and* has

caused injury in the forum state. *Id.*; *see Bristol-Meyers*, 137 S. Ct. at 1780 ("In other

words, there must be 'an affiliation between the forum and the underlying

controversy, principally, *an activity or an occurrence that takes place in the forum*

[*s*]*tate* and is therefore subject to the [s]tate's regulation.'" (brackets omitted)

(emphasis added) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564

U.S. 915, 919 (2011))).

Both *Ford* and *World-Wide Volkswagen* demonstrate that the hearing justice in the case at bar was correct in rejecting the application of the stream-of-commerce theory for specific jurisdiction in this case. *See Ford*, 141 S. Ct. at 1022; *World-Wide Volkswagen*, 444 U.S. at 297. Here, the injury allegedly caused by the tire occurred in *Connecticut*; plaintiff's claims did not "arise[] from a car accident in" Rhode Island. *Ford*, 141 S. Ct. at 1028. Although the decedent was a resident of Rhode Island whose death ultimately occurred in Rhode Island, those facts alone are not enough; it was key in *Ford* that the injury also occurred in the forum state. *See Ford*, 141 S. Ct. at 1032-33 (noting that "the place of a plaintiff's injury and residence * * * still may be relevant in assessing the link between the defendant's forum contacts and the plaintiff's suit"). Furthermore, the allegedly defective tire was manufactured and installed in Tennessee, not in Rhode Island, and the rotator truck was later brought to Massachusetts by Sterry Street itself.

We are therefore satisfied that there are insufficient indicia in the record to support plaintiff's assertion that her claims arise out of or relate to the Bridgestone defendants' contacts with Rhode Island. Accordingly, the hearing justice did not err when he determined that the Superior Court could not exercise specific personal jurisdiction over the Bridgestone defendants.[5]

---

[5] Because we have determined that plaintiff's claims do not sufficiently arise out of or relate to the Bridgestone defendants' contacts with the forum, we need not look

**B**

**Jurisdictional Discovery**

**Standard of Review**

This Court has observed that "jurisdictional fact discovery is acceptable in certain limited circumstances." *Smith v. Johns-Manville Corporation*, 489 A.2d 336, 339 (R.I. 1985). The Court "will not interfere with the trial court's refusal to grant discovery except on the clearest showing of actual and substantial prejudice to the litigant[.]" *Id.* (brackets and deletions omitted) (quoting *Cheng v. Boeing Company*, 708 F.2d 1406, 1412 (9th Cir. 1983)). "Discovery, however, should be granted where pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfactory showing of the facts is necessary." *Id.* (deletions omitted) (quoting *Cheng*, 708 F.2d at 1412). The Court, however, will "not grant the plaintiff a license to engage in a 'fishing expedition.'" *Coia v. Stephano*, 511 A.2d 980, 984 (R.I. 1986).

**Discussion**

The plaintiff submits that the hearing justice erred in denying her motion to conduct jurisdictional fact discovery. The plaintiff asserts that the hearing justice improperly relied on the affidavits supplied by the Bridgestone defendants, and that

---

to whether the Bridgestone defendants each purposefully availed themselves of the laws of Rhode Island.

she should have been permitted to conduct jurisdictional discovery—such as deposing the affiants and reviewing the documents that were relied upon in the Bridgestone defendants' affidavits—into the Bridgestone defendants' connections with Rhode Island. The plaintiff contends that probative information about the sales of Bridgestone tires in Rhode Island, including the subject M844 tire, was in the exclusive control of the Bridgestone defendants.

In *Coia*, this Court rejected the plaintiff's contention that the Superior Court should have permitted jurisdictional discovery. *Coia*, 511 A.2d at 984. As in *Coia*, the plaintiff in the case at bar has failed to refute any of the allegations raised by the Bridgestone defendants in the affidavits provided. *See id.* (noting an absence in that case "of any specific allegations that would support a finding of personal jurisdiction"). Indeed, the plaintiff actually referred to, cited, and attached as exhibits the affidavits provided by the Bridgestone defendants in her pleadings in relating the facts of the case. In this case, "[t]here is not a 'great deal of controversy surrounding the question of minimum contacts[.]'" *Id.* Jurisdictional discovery was not necessary to develop any further facts in order for the hearing justice to determine that the Superior Court lacked personal jurisdiction over the Bridgestone defendants because the injury did not occur in Rhode Island. *See Ford*, 141 S. Ct. at 1022. Allowing such discovery would therefore "grant the plaintiff a license to engage in a 'fishing expedition.'" *Coia*, 511 A.2d at 984. Accordingly, the hearing

- 16 -

justice did not err in denying the plaintiff's motion to conduct jurisdictional fact discovery.

## III

## Conclusion

For the reasons stated herein, we affirm the partial final judgment of the Superior Court. The record may be returned to the Superior Court.

Justice Goldberg and Justice Long did not participate.



# STATE OF RHODE ISLAND

## SUPREME COURT – CLERK'S OFFICE

Licht Judicial Complex
250 Benefit Street
Providence, RI 02903

## OPINION COVER SHEET

| | |
|---|---|
| **Title of Case** | Alison N. Martins, Individually and as Co-Executrix of the Estate of John Martins v. Bridgestone Americas Tire Operations, LLC, et al. |
| **Case Number** | No. 2018-0143-Appeal.<br>(PC 17-2420) |
| **Date Opinion Filed** | January 20, 2022 |
| **Justices** | Suttell, C.J., Robinson, and Lynch Prata, JJ. |
| **Written By** | Chief Justice Paul A. Suttell |
| **Source of Appeal** | Providence County Superior Court |
| **Judicial Officer from Lower Court** | Associate Justice Brian P. Stern |
| **Attorney(s) on Appeal** | For Plaintiff:<br><br>Jeffrey A. Mega, Esq.<br>Douglas E. Chabot, Esq.<br>Mark B. Decof, Esq.<br>Shad M. Miller, Esq. |
| | For Defendants:<br><br>Michael T. Maroney, Esq.<br>William E. O'Gara, Esq.<br>Brian J. Lamoreaux, Esq. |